OPINION OF THE COURT
Howard E. Goldfluss, J.
The defendant is charged in a total of 18 counts with rape in the first degree, sodomy in the first degree and sexual abuse in the first degree. Quoting from the defendant’s moving papers: “The indictment results from the Traca Day Care Sex Scandal Cases’ which have been widely publicized in the newspapers since August 2, 1984”.
The indictment names five alleged victims, ranging in ages from four through six. The defendant requests that as-part of the discovery required to prepare his defense, this court order the said infants be produced “for examination by a licensed psychiatrist and pediatrician” for defendant, pursuant to CPL 240.40.
He requests this unusual relief because he alleges that based upon information and belief, he has reason to believe that “the District Attorney and/or consulting doctors, if any, used inappropriate and unacceptable examination techniques, which produced invalid findings of facts, diagnosis, and inaccurate states ments from the aforementioned children.”
*755 He further alleges that the “District Attorney has been conducting a public campaign in the news media in reference to seven (7) day care centers in Bronx County and has thereby made it impossible to obtain a fair and impartial examination of the children by staff doctors in Bronx County.”
The defendant has made similar charges oral and written, which allege impropriety of the District Attorney in the presentation of evidence before the Grand Jury resulting in the instant indictment.
Although to this date said charges are general in nature and have not been particularized, this court has previously ordered a hearing to determine the validity of such allegations, and whether there had been a fair Grand Jury presentation.
The defendant, however, requests the further relief of discovery by examination of the children themselves. He relies on CPL 240.40, which authorizes discovery in criminal cases.
At the outset, it must be emphasized that there is no common-law right to discovery in such cases. Any such right emanates from statute. As a matter of fact, discovery is in derogation of the common law, and therefore must be strictly construed. Discovery must necessarily be limited to the perimeters of the statute. (See, Matter of Mulvaney v Dubin, 80 AD2d 566 [1981].) Certainly, the appropriate section (CPL 240.20 [1] [c]) gives the defendant the right to examine written reports or documents which could affect the competence of the credibility of a witness’ testimony. But CPL 240.10 (3) defines discoverable property as tangible personal or real property. The specific provisions dealing with mental examinations refer only to “[a]ny written report or document” (CPL 240.20 [1] [c]).
While these statutory limitations exist, and while there is no authority for such procedure in New York, there have been cases in Federal and other State jurisdictions where courts have ordered pretrial psychiatric examination as an aid in its determination of a witness’ competency. (See, United States v Benn, 476 F2d 1127; Ballard v Superior Ct., 64 Cal 2d 159, 410 P2d 838; State v Butler, 27 NJ 560, 143 A2d 530.)
If this court chose to utilize extrastatutorial discretion in ordering such examinations — solely in the interest of justice — it would still be bound by the cautionary language used in United States v Benn (supra) and State v Butler (supra). These cases clearly stated that such discretion must be carefully considered in light of its potential dangers. In the Benn case, the court was troubled by reason of the fact that the very act of examining the complainant or witness could serve as a “tool of *756 harassment” (p 1131), could seriously “impinge on a witness’ right to privacy” (p 1131) and that “the impact of all these considerations may well deter the victim from lodging any complaint at all” (p 1131; see, United States v Butler, 481 F2d 531). Thus, the need for examination must be balanced against such potential dangers.
A Grand Jury has found prima facie evidence that the children named in the indictment have been sexually abused. The specifics of this case cry out against a court-ordered physical and/or psychological examination more than six months after the acts were alleged to have occurred. These children are not discoverable items. Even if the discovery statute could be stretched out of proportion to accommodate such a ruling, it would not only be inappropriate in the instant case but would border on gratuitous cruelty.
The emotional trauma resulting from child sexual abuse is more serious than the physical trauma — including the venereal and genital infection that often results from such victimization. The latter usually heals or can be cured medically. The former may and usually does result in prolonged or permanent damage.[1] These potential dangers create a guarded future prognosis. Therapy must be applied with the highest degree of sensitivity. The effects on such impressionable infants who have been victimized by sexual abuse include mental retardation, intellectual and intelligence handicap, impaired aggressive impulse control, diminished ego competency, reduced reality, and poor object relationships.
In balancing rights, a court should not function in a vacuum. It must be understood and conceded that a court-directed examination by defendant’s psychiatrists would be aimed at proving his allegations. The infants would be questioned for the purpose of determining whether they were persuaded to testify falsely about their sexual abuse at the outset. They would not be interrogated with therapy in mind. It will be another ego diminishing episode — a recurring trauma — setting the stage for traumatic repercussions.[2] The National Center for the Prevention of Child Abuse estimates that 200,000 children are sexually exploited each year, a curse on society of epidemic proportions. The medical profession has a responsibility to these children — to heal them. The courts have equal responsibility — to protect *757 them. Children have always been the wards of the court. While the court has the continuing burden to protect the rights of the accused — it has at least an equal obligation to safeguard the welfare of minors.
With this in mind, one wonders how the defendant would be prejudiced if he were limited to elicitation of the evidence he seeks through trial examination of the physicians who originally examined the children — or of the children themselves. Absolute right of confrontation would not be denied him, and if any prejudice is suffered by such limitation, it would be miniscule compared to the traumatic effects possibly incurred by a 4-, 5-, or 6-year-old child. In determining the rights of the respective parties, compassion and sensitivity must play a role.
The eminent jurist, Sir Edward Coke, in the early 17th century, simply stated a maxim which courts throughout history have repeatedly put to good use “The common law is nothing but reason.”
Any other finding herein would violate the spirit and meaning of that expostulation of wisdom.
Motion to direct the infant complainants to be produced for physical and/or psychiatric examination by physicians retained by the defendant is denied.

. See, Child Sexual Abuse Ultimate in Maltreatment Syndrome, 278 NY St J of Med No. 3 (March 1978).

. Fontana,. Maltreatment Syndrome of Children, Pediatric Ann (Oct. 1984).