**STATE of Tennessee, Appellant,**

v.

**Frances Lucindy BALLARD,**
**Appellee (Defendant).**

Court of Criminal Appeals of Tennessee, at Jackson.

April 9, 1986.

Permission to Appeal Denied by Supreme Court July 28, 1986.

W.J. Michael Cody, Atty. Gen., Ann Lacy Johns, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Phyllis B. Gardner, Henry P. Williams, Asst. Dist. Attys. Gen., Memphis, for appellant.

Arch B. Boyd, III, James V. Ball, Memphis, for appellee (defendant).

OPINION

DUNCAN, Judge.

The State has filed an appeal, pursuant to Rule 9 of the Rules of Appellate Procedure, seeking a review of the trial court's order granting the defendant's pretrial motion for independent psychiatric/psychological evaluation of certain children, said children being named as alleged victims in

nineteen (19) separate indictments brought against the defendant, each indictment charging the defendant with aggravated rape and aggravated sexual battery. Allegedly, the crimes occurred in 1983 and 1984.

The issue before us is whether the trial judge erred in granting this motion. We find that he did.

The record indicates that the alleged victims were two (2) to five (5) years of age, and they attended the Georgian Hills Child Care Center. After the alleged events occurred involving these children, they were examined and treated by certain psychiatrists. Thereafter, the defendant filed a motion seeking permission to have the children evaluated by an expert of her own choosing.

The trial court heard arguments on the motion on March 28, 1985, and received testimony on the motion on April 8, 1985 at which time Dr. Ben Bursten testified for the defendant, and Drs. Sue Atwood and Richard Luscomb testified for the State. We have reviewed their testimony and will briefly refer to some of their testimony that we deem pertinent to the issue before us.

The defendant attempted to establish through Dr. Bursten's testimony that independent evaluations of the children would not be overly harmful to them. Dr. Bursten said that the possibility of harm to the children would depend upon the expertise of the examiner or team conducting the evaluation. He explained how a qualified expert would probably proceed. He stated that he could not say that any specific benefit would result from the additional evaluation, stating that benefits "might come or could reasonably come." Dr. Bursten agreed that before a crime victim should be subjected to an independent evaluation, there should be some reason for it to be done.

The State countered with Drs. Atwood and Luscomb, and attempted to show that the children would be substantially harmed by an additional evaluation by an expert who would be a stranger to the children.

Dr. Atwood had been involved with the treatment of ten (10) of the children since the events occurred. Dr. Luscomb had treated twelve (12) or thirteen (13) of the children. Both of these doctors were of the opinion that another interview of the children by a stranger, even though qualified, would be traumatic for them and would serve little, if any, purpose. Dr. Atwood stated that an additional interview by a stranger would cause a child's symptoms to resurge and would be "almost like recreating the original trauma ... it's almost as if they relive the original experience." Dr. Atwood explained that the children had made improvement in therapy, and that another person interviewing them could undo that progress.

Dr. Luscomb pointed out that an expert now evaluating the children would not see the children as they appeared seven (7) to nine (9) months earlier, and that a reevaluation by a stranger could "cause some regression." Dr. Luscomb stated that reevaluating the children would not be merely "unpleasant," but would be "traumatic."

The State also presented five (5) letters (later reduced to affidavits) from health care professionals, three (3) of whom were involved in the treatment of the children. Four (4) of these individuals stated that an evaluation such as that sought by the defendant would be harmful to the children.

In *Forbes v. State*, 559 S.W.2d 318 (Tenn. 1977), the defendant filed a motion one day before the commencement of the trial for an order directing the victim of a rape "to present herself for a psychological examination ... to examine into her mental attitudes prior to trial [in order] to introduce expert testimony to impugn the credibility of the prosecutor and otherwise question her competency as a witness and truthfulness." *Forbes, supra* at 320. The trial judge denied the motion, and on appeal, the Supreme Court, after pointing out that a mandatory rule requiring rape victims to submit to psychological or psychiatric examination would be contrary to public policy, stated the following:

This question came before the California Supreme Court in *Ballard v. Superior Court of San Diego County*, 64 Cal.2d 159, 49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416 (1968). After holding that a general rule requiring psychiatric examination of complaining witnesses in sex cases would be both unnecessary and inappropriate, the Court said:

> Rather than formulate a fixed rule in this matter we believe that discretion should repose in the trial judge to order a psychiatric examination of the complaining witness in a case involving a sex violation if the defendant presents a *compelling reason* for such an examinaton. (Emphasis supplied). 49 Cal.Rptr. 313, 410 P.2d 849.

559 S.W.2d 320.

We note that in the *Ballard* case, the Court found that the record showed no necessity for an examination of the prosecutrix.

After quoting the above from *Ballard*, the Court in *Forbes* continued by saying and holding:

> Following the full reporting of *Ballard*, there appears in 18 A.L.R.3d beginning on page 1433, an annotation headed 'Requiring Complaining Witness in Prosecution for Sex Crimes to Submit to Psychiatric Examination.' This annotation reveals that the general rule supports such examinations on a discretionary basis.
>
> We hold that in any case involving a sex violation, the trial judge has the inherent power to compel a psychiatric or psychological examination of the victim, where such examination is necessary to insure a just and orderly disposition of the cause. Such power should be invoked only for the most compelling of reasons, all of which must be documented in the record. This discretion should be exercised sparingly.

559 S.W.2d at 321.

Nevertheless, the *Forbes* court found no error, basing its conclusion on the grounds that the record revealed no compelling reasons for ordering the victim to submit to a psychological examination and because the motion was not timely filed in the trial court.

In *Seelback v. State*, 572 S.W.2d 267 (Tenn.Cr.App.1978), the defendant contended that his motion for a psychiatric examination of the rape victim should have been sustained by the trial court, claiming that inconsistencies between the victim's testimony and the testimony of other witnesses, and her pattern of promiscuous conduct, showed her mental instability. Our Court, in affirming the trial court's denial of the motion, and in recognizing the rule as stated in *Forbes, supra,* found that the record showed no compelling reasons for the examination.

In *People v. Beauchamp*, 126 Misc.2d 754, 483 N.Y.S.2d 946 (Sup.1985), the court held that the defendant was not entitled to physical and/or psychological examination of the five (5) alleged sexual abuse victims, who ranged in ages from four (4) through six (6), by qualified experts more than six (6) months after the acts were alleged to have occurred. In so ruling, the court made the following comments that are germane to the present case:

> A grand jury has found prima facie evidence that the children named in the indictment have been sexually abused. The specifics of this case cry out against a court ordered physical and/or psychological examination more than six months after the acts were alleged to have occurred. These children are not discoverable items. Even if the discovery statute could be stretched out of proportion to accommodate such a ruling, it would not only be inappropriate in the instant case but would border on gratuitous cruelty.
>
> . . . . .
>
> In balancing rights, a court should not function in a vacuum. It must be understood and conceded that a court directed examination by defendant's psychiatrists would be aimed at proving his allegations. The infants would be questioned for the purpose of determining whether they were persuaded to testify falsely

about their sexual abuse at the outset. They would not be interrogated with therapy in mind. It will be another ego diminishing episode—a recurring trauma—setting the stage for traumatic repercussions.

The National Center for the Prevention of Child Abuse estimates that 200,000 children are sexually exploited each year, a curse on society of epidemic proportions. The medical profession has a responsibility to these children—to heal them. The courts have equal responsibility—to protect them. Children have always been the wards of the court. While the court has the continuing burden to protect the rights of the accused—it has at least an equal obligation to safeguard the welfare of minors.

With this in mind, one wonders how the defendant would be prejudiced if he were limited to elicitation of the evidence he seeks through trial examination of the physicians who originally examined the children—or, of the children themselves. 483 N.Y.S.2d at 948–49.

We have read the case of *Ballard v. Superior Court of San Diego County, supra,* and the discussion in 18 A.L.R.3d beginning at page 1433, as cited in *Forbes, supra,* and we note that in those references, it is generally stated that the victim of a sex crime may be required to submit to an examination if there are compelling reasons, such as where substantial doubt is cast upon the victim's sanity, or where there is a record of prior mental disorders or sexual fantasies, or where the story is incredible, and even in these situations, only if there is little or no corroboration to support the charge.

We hasten to point out that in the present record before us, there is nothing to indicate that these children had any prior history of mental disorders or sexual fantasies, or that their stories were incredible. Also, it is obvious that at this stage of the proceedings, we have no way of knowing what corroborating evidence, if any, the State may be able to present on the trial of the case.

In 18 A.L.R.3d 1439–41 (1968), several cases are discussed in which the courts have stated the view that trial judges may exercise their discretion in ordering psychiatric examinations of a victim if compelling reasons are shown. Significantly, however, no compelling reasons were found in any of these cases to require such examination.

Equally significant to note is that in all of the cases we have reviewed that dealt with the question of requiring a sex victim to submit to evaluation for compelling reasons, there had been no prior evaluations conducted by competent experts. In the present case, these children have already been evaluated by competent experts, and the defendant will have ample opportunity to cross-examine them at the trial. From our review of their testimony in this record, there is not the slightest indication that these experts would be anything but fair and unbiased witnesses.

In granting the defendant's motion, the trial court ruled:

Now, let's just capsulize, as I see it, what I have heard, or at least what I think I heard, most of which, in all deference to the doctors, wasn't particularly new or earthshaking. I think anybody with just ordinary and common intelligence knows that children in trying situations are going to suffer some trauma. Now the degree of which certainly I'm not able to measure and probably a lot of other people are not able to measure either. But there's no question in my mind that if they had the experience that serves as a basis for this indictment, there's no question in my mind, one, that they did suffer some trauma, two, that as a result of their treatment they have improved and to expose them to further talks, examinations, questions and of all things, the trial, is going to have some devastating effect.

But I find myself in this situation. To what extent do you accommodate the emotions of children while at the same time eroding basic and fundamental rights of an accused person in a trial.

And as I balance that, I think that if I did not allow the examination that we have discussed here, it would be simply letting down that floodgate that stands as in favor of the defense in this trial. This lady stands presumed to be innocent until such time as she's proven guilty and I think it would be fundamentally unfair to allow the State to proceed in this trial without the defense having an opportunity to conduct those examinations.

As we interpret the trial court's ruling, the only possible compelling reason for the children to be reevaluated is his finding that the defendant would be denied his constitutional right to a fair trial.

We see nothing in the record to justify such a finding. Quite obviously, the question of whether the denial of an evaluation would result in the constitutional violation of the defendant's right to a fair trial is not an issue that could be resolved pretrial or interlocutorily on appeal. Neither the trial court nor we have any way of knowing what evidence will ultimately be presented in the trial of these cases. Obviously, the issue of the fairness of the defendant's trial would by necessity have to be resolved after the trial was held, and even then, the issue would have to be decided in the context of the entire trial record, regardless of whether the defendant was denied the right to have these children reevaluated.

The defendant argues that the compelling reasons for having these children reevaluated are the multiple victims, their tender years, the seriousness of the multiple offenses charged, and the element of surprise.

We do not view any of these as a compelling reason. All sex crimes are serious and carry substantial penalties. Also, if the tender age of a victim was a compelling reason, then every child victim of tender years would have to be subjected to an independent evaluation. Further, there is nothing unusual about a sex offender being involved in multiple offenses. Also, the fact that law enforcement officials and medical experts have questioned and examined these children on several occasions is a common occurrence in criminal cases. The defendant will have full opportunity to explore these prior interviews by cross-examining the State's witnesses at the trial. Additionally, the record indicates that the defendant has or will obtain by discovery the gist of the evidence to be presented by the State, thus eliminating any element of surprise.

Furthermore, as we have indicated, the trial court in its ruling cited none of these alleged reasons for ordering the reevaluation of these children.

In passing, we note that at the time of the argument of this case, we reserved a ruling on the State's motion to strike the defendant's brief and on the defendant's amended motion, to which is attached certain affidavits, requesting us to consider alleged post-judgment facts. We overrule both of these motions.

We are of the opinion that the affidavits submitted by the defendant do not qualify as post-judgment facts within the purview of T.R.A.P. 14. Even if such affidavits were properly before us, the contents of same would not serve to aid the defendant's contentions, nor would such result in any different ruling than we make herein.

As to the State's motion to strike the defendant's brief, it is our prerogative to ignore any portion of the brief that is not supported by the record.

In summary, we find that no compelling reason has been shown for the independent reevaluation of these children. The trial court's order is reversed and the case is remanded to the trial court for trial.

TATUM and SCOTT, JJ., concur.