The PEOPLE of the State of
Colorado, Petitioner,

v.

Richard John CHARD, III, Respondent.

No. 89SC547.

Supreme Court of Colorado,
En Banc.

March 11, 1991.

Rehearing Denied April 22, 1991.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Denver, for petitioner.

Klauzer & Tremaine, Randall W. Klauzer, Steamboat Springs, McGill Professional

Law Corp., Ralph A. Cantafio, Steamboat Springs, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

The People appeal the court of appeals reversal of Richard John Chard's (the defendant) conviction on five criminal counts of aggravated incest. The court of appeals held that reversal was warranted because of the trial court's failure to compel the seven-year-old victim to submit to involuntary psychological and physical examinations. We reverse.

## I.

From June 20, 1986, until September 1, 1986, defendant's daughter, R.S., visited with her natural father, defendant Chard, in Steamboat Springs, Colorado. R.S. was six years old at this time and lived in California with her mother and her stepfather. Shortly after her return to California, R.S. complained to her mother that her "tutu" hurt. R.S.'s mother examined R.S.'s vaginal area and found it to be "gapingly open." She also noted that the area was "real bright red" or "bloody." R.S.'s mother was concerned about R.S.'s condition, but decided not to take her to a doctor at that time.

In February 1987, after speaking with her attorney, R.S.'s mother took R.S. to a California pediatrician, Dr. Valerie Young. After examining R.S. thoroughly, Dr. Young noted that she had an abnormally deep vaginal area, a large hymenal opening, and increased vascularity and scarring in the vaginal area. In addition, R.S.'s rectum was enlarged and unusually loose. Dr. Young concluded that R.S. had been subjected to penile penetration of the vagina and anus over an extended period of time. Dr. Young referred R.S. to a California therapist, Suzanne Long, for counseling. Long interviewed R.S. twice and subsequently filed a child abuse report.

Thereafter, the defendant was charged with five counts of aggravated incest. On June 8, 1987, the defendant filed a motion to compel R.S. to undergo a second physical and psychological examination. The trial court held a hearing on the motion on July 21, 1987, which consisted of testimony by the defendant and a local physician, Dr. David Wilkinson.

Dr. Wilkinson acknowledged that Dr. Young's examination of R.S. was thorough, but he stated that there were two possible benefits to be derived from a second physical examination. First, a second examination would reveal if the sexual abuse was continuing. Second, some of the findings and measurements in Dr. Young's report were subjective and might differ in a subsequent examination. Dr. Wilkinson conceded, however, that a physical examination could be traumatic or painful to R.S. and that some of her injuries may have healed since Dr. Young's examination.

No expert testimony was presented regarding the requested psychological examination. The defendant testified that R.S. may have accused him of sexual abuse because she had watched material of a "bizarre and deviant sexual nature" on television. The defendant also stated that R.S. had "mischaracterized" certain things that had happened to her. On cross-examination, the defendant testified that R.S. was as "sharp as a tack" and knew the difference between truth and falsity.

From the evidence presented, the trial court concluded that any benefits that could be obtained from a second physical examination were too speculative. The court also denied the motion for a psychological examination on the basis that cross-examination of R.S. would establish sufficiently whether she was distorting the facts or whether she had been subjected to undue influence.

At trial, R.S. testified that the defendant had stuck his penis into her "tutu" and "bottom" numerous times while she was visiting him in the summer of 1986. Dr. Young testified that R.S. had been subjected to chronic penetration of the vagina with some object and to recurrent, long-term penile penetration of the rectum. Long testified that during her interviews with R.S., R.S. identified the defendant as the person that had sexually abused her. In

his defense, the defendant took the stand and denied sexually abusing R.S. He presented expert testimony that marriage dissolutions and custody battles could undermine the reliability of a child's sexual assault claims. He also presented expert testimony critiquing Dr. Young's method of measuring vaginal and rectal openings. On November 19, 1987, the jury found the defendant guilty on all five counts of aggravated incest. He was sentenced to 14 years imprisonment. The court of appeals reversed the defendant's conviction, finding that the defendant had demonstrated a compelling reason for ordering a second physical and psychological examination and that the trial court had abused its discretion by denying these examinations.

## II.

We first address the defendant's contention that the trial court abused its discretion by failing to order R.S. to undergo a psychological examination. The defendant claims that a second examination would have little or no traumatic effect on R.S. and that it would determine whether R.S. was competent to testify.

## A.

 A criminal defendant has a constitutional right to present evidence on his behalf, *People v. Pronovost*, 773 P.2d 555, 558 (Colo.1989), as well as a constitutional right to confront adverse witnesses, *Kogan v. People*, 756 P.2d 945, 959 (Colo.1988). These rights have been construed as granting the defendant the right to obtain material evidence, subject to certain limitations. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).

 In deciding whether to grant a defendant's motion for the involuntary psychological examination of a child sexual-abuse victim, the court must weigh the defendant's right to a fair trial against the invasion of the victim's privacy interests. *Moor v. State*, 709 P.2d 498, 508 (Alaska App.1985). Children are entitled to the same constitutional guarantees as adults, including protection from unreasonable searches and seizures under the fourth amendment. *People v. Nokes*, 183 Cal. App.3d 468, 476–81, 228 Cal.Rptr. 119, 123–27 (1986).

Many jurisdictions have sought to balance a defendant's interest in a fair trial against the victim's privacy interests by requiring the defendant to show a "compelling reason or need" before granting a motion for an involuntary psychological examination. *See, e.g., Moor v. State*, 709 P.2d at 508; *State v. LeBlanc*, 558 So.2d 507, 509 (Fla.App.1990); *State v. Filson*, 101 Idaho 381, 385, 613 P.2d 938, 942 (1982); *State v. Glover*, 49 Ill.2d 78, 81–83, 273 N.E.2d 367, 370 (1971); *State v. Gregg*, 226 Kan. 481, 488–89, 602 P.2d 85, 91 (1979); *State v. Nelson*, 235 Neb. 15, 20–22, 453 N.W.2d 454, 458 (1990).

Colorado has also adopted the "compelling reason or need" test with regard to involuntary psychological examinations. In *People v. Estorga*, 200 Colo. 78, 82, 612 P.2d 520, 523–24 (1980), this court approved the test set forth in *People v. King*, 41 Colo.App. 177, 179, 581 P.2d 739, 741 (1978), to determine the circumstances under which a trial court should grant a defendant's motion for a compulsory psychological examination of a child sexual-abuse victim. The court in *Estorga* held that a psychological examination "should be ordered only when there is a compelling reason for it." *Estorga*, 200 Colo. at 82, 612 P.2d at 523. The court further held that "the ordering of such an examination is within the discretion of the trial court," *id.*, and that the trial court must " 'balance the possible emotional trauma, embarrassment or intimidation to the complainant against the likelihood of the examination producing material, as distinguished from speculative, evidence.' " *Id.* (quoting *King*, 41 Colo. App. at 179, 581 P.2d at 741). Cases following *Estorga* and *King* have upheld the trial court's discretion to order a psychological examination only upon the defendant's showing of a "compelling need or reason." *See People v. Woertman*, 786 P.2d 443, 449 (Colo.App.1989), *rev'd on other grounds*, *Woertman v. People*, 804 P.2d 188 (Colo. 1991) (court properly denied motion where the emotional trauma of a second examina-

tion outweighed the material evidence it would have produced); *People v. Lucero,* 724 P.2d 1374, 1376 (Colo.App.1986) (no abuse of discretion where court balanced valid conflicting interests to deny motion for compulsory psychological examination); *People v. Piro,* 671 P.2d 1341, 1343 (Colo. App.1983) (trial court did not abuse its discretion by denying the defendant's motion to compel a psychiatric examination).

### B.

■ The defendant argues that he demonstrated a "compelling reason" for ordering a second psychological examination of R.S. The defendant's attempt to provide a "compelling reason" in this case consisted of an affidavit and testimony that R.S. had mischaracterized occurrences in her past; that she had been exposed to bizarre, deviant behavior on television which could have caused her to fabricate some or all of the accusations; and that she had been unduly influenced by her mother and other adults. The *King* court rejected these types of statements as being "conclusory in nature" and "devoid of specific factual recitation." *King,* 41 Colo.App. at 179, 581 P.2d at 741. The defendant's allegations concerning R.S. were also undermined by his testimony on cross-examination when he stated that R.S. was as "sharp as a tack"; that R.S.'s mischaracterizations were nothing of major consequence; that her exposure to bizarre sexual behavior on television consisted of school programs discussing sexual abuse and general access to television; and that R.S. knew the difference between a truth and a lie. The trial court concluded that the defendant had not demonstrated a compelling reason for ordering a second psychological examination and that any "benefits to be obtained from a further examination were too speculative in nature." On this basis, the trial court exercised its discretion and denied the defendant's motion for a second examination of R.S. The record clearly indicates that the defendant's attempt to demonstrate a compelling reason was inadequate to show that the likelihood of producing material evidence, as opposed to speculative evidence, outweighed the possible trauma, embar-

rassment, or intimidation that R.S. might feel. *Lucero,* 724 P.2d at 137. The defendant has failed to show that the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *People v. Milton,* 732 P.2d 1199, 1207 (Colo.1987). Therefore, we hold that the trial court did not abuse its discretion in denying the defendant's motion for an involuntary psychological examination of R.S.

### III.

We next address the defendant's argument that he demonstrated a compelling reason to order a second physical examination of R.S. and that the trial court abused its discretion in denying this request. The defendant claims that another physical examination would produce evidence useful to his defense.

### A.

We first consider what the appropriate standard is for ordering an involuntary physical examination.

Although many of the policy considerations applicable to a psychological examination also apply to a physical examination, the purpose of each is not necessarily the same. Involuntary psychological examinations are usually ordered to determine the competency of the child victim to testify. *See Lucero,* 724 P.2d at 1375; *Piro,* 671 P.2d at 1342–43. Involuntary physical examinations are usually requested to establish a substantive defense to the sexual-abuse charge. *See Turner v. Commonwealth,* 767 S.W.2d 557, 559 (Ky.1988).

Under the common law, a trial court could not order an involuntary physical examination of a child victim because "discovery in criminal cases was unknown to the common law." *See Sergent v. People,* 177 Colo. 354, 365–66, 497 P.2d 983, 989 (1972); *People ex rel. Shinn v. District Court,* 172 Colo. 23, 26–27, 469 P.2d 732, 733 (1970). The adoption of the Colorado Rules of Criminal Procedure provided defendants with an expanded right to discovery in criminal cases. *Sergent,* 177 Colo. at 366, 497 P.2d at 989. This right to

discovery is expressly limited to the categories set forth in Rule 16. *Richardson v. District Court,* 632 P.2d 595, 598–99 (Colo. 1981). These categories do not include compelled physical examinations of child victims. *See* Crim.P. 16.

There is a split of authority with regard to a trial court's power to order an involuntary physical examination of a child victim in the absence of statutory authority. Some jurisdictions, most notably North Carolina and Texas, have held that in the absence of specific statutory authority, a trial court may not order an unwilling witness to submit to a physical examination. *See State v. Joyce,* 97 N.C.App. 464, 466–469, 389 S.E.2d 136, 138–39 (1990); *State v. Hewett,* 93 N.C.App. 1, 8–10, 376 S.E.2d 467, 472 (1989); *State ex rel. Wade v. Stephens,* 724 S.W.2d 141, 143–44 (Tex.App. 1987). This view has not found widespread acceptance outside of these jurisdictions. The majority of courts considering the issue of whether a trial court has the power to order a compelled physical examination of a child victim in the absence of statutory authority have sought to balance a defendant's right to discover possible exculpatory evidence against the victim's privacy interests. *See, e.g., People v. Nokes,* 183 Cal.App.3d 468, 476–81, 228 Cal.Rptr. 119, 123–27 (1986). These courts have attempted to strike the proper balance by holding that it is within a trial court's discretion to order an involuntary physical examination, but only on a showing by a defendant of a "compelling need or reason" for the examination. In adopting the "compelling need or reason" test in *State v. Ramos,* 553 A.2d 1059 (R.I.1989), the Rhode Island Supreme Court stated:

> We hold that a trial justice has discretionary power to require a witness in a criminal trial to submit to an independent physical examination only under the most compelling of circumstances. In situations in which the defendant has shown substantial need and justification and no violation of substantial rights will result, the trial justice has discretionary power to order the complainant to undergo a physical examination. The practice of granting physical examinations of

criminal witnesses must be approached with utmost judicial restraint and respect for an individual's dignity. In determining whether to order an independent medical examination, the trial justice should consider (1) the complainant's age, (2) the remoteness in time of the alleged criminal incident to the proposed examination, (3) the degree of intrusiveness and humiliation associated with the procedure, (4) the potentially debilitating physical effects of such an examination, and (5) any other relevant considerations.

*Id.* at 1062. In a similar case, the Alabama Court of Criminal Appeals held that a defendant must show an "extreme need" before the trial court will order an involuntary physical examination of a child victim. *Lanton v. State,* 456 So.2d 873 (Ala.Crim. App.1984). The court in *Lanton* stated:

> It may well be doubted, in cases of rape and cognate offenses, whether the court has the power to make an order compelling the inspection of the private person of a prosecutrix in the event of her refusal to submit to such examination. If such right exists at all, we should hold it to be a matter of judicial discretion with the trial court, to be exercised only in cases of extreme necessity, and not a subject of review on appeal to this court.

*Id.* at 873–74 (quoting *McGuff v. State,* 88 Ala. 147, 153, 7 So. 35, 38 (1889)). A number of jurisdictions have decided to use the "compelling need or reason" test based on reasoning similar to that presented in *Ramos* and *Lanton*. *See State v. Farr,* 558 So.2d 437, 437 (Fla.Dist.Ct.App.1990); *State v. Drab,* 546 So.2d 54, 55 (Fla.Dist.Ct. App.1989); *State v. Glover,* 49 Ill.2d 78, 81–83, 273 N.E.2d 367, 370 (1971); *State v. Garrett,* 384 N.W.2d 617, 619 (Minn.App. 1986); *People v. Beauchamp,* 126 Misc.2d 754, 758–60, 483 N.Y.S.2d 946, 948 (N.Y. Sup.Ct.1985).

The highly intrusive nature of a physical examination raises the same concerns about emotional trauma, embarrassment, and intimidation to the child victim that are present with regard to a psychological examination. These concerns must be balanced against a defendant's right to

**356**

discovery. We therefore adopt the majority view and hold that a trial court may exercise its discretion to order an involuntary physical examination when a defendant demonstrates a "compelling need or reason" for the examination. In exercising this discretion, the trial court must " 'balance the possible emotional trauma, embarrassment or intimidation to the complainant against the likelihood of the examination producing material, as distinguished from speculative, evidence.' " *Estorga,* 200 Colo. at 82, 612 P.2d at 523 (quoting *King,* 41 Colo.App. at 179, 581 P.2d at 741); *see also People v. Woertman,* 786 P.2d 443, 449 (Colo.App.1989), *rev'd on other grounds, Woertman v. People,* 804 P.2d 188 (Colo.1991).

### B.

The defendant contends that a second physical examination is necessary for several reasons. It would show the presence or absence of ongoing sexual contact and whether the contact was self-induced or induced by another; it would allow for additional examination techniques not previously utilized; and it would provide expert opinion as to the accuracy of the results obtained by Dr. Young. The defendant argues that these allegations are sufficient to establish a compelling reason for ordering the physical examination.

The trial court denied the defendant's request for a second physical examination because the "benefits to be obtained from a further examination were too speculative in nature." The defendant's own expert witness, Dr. Wilkinson, testified that a physical examination is "frightening to children, [because] they perceive it as physically

painful, and to some extent it can be." Dr. Wilkinson also testified that "the one potential benefit" to be obtained from a second examination "would be to determine if there were ongoing problems." The trial court weighed the competing interests and concluded that the trauma and embarrassment to R.S. outweighed any benefits the defendant might obtain from the examination.[1]

In *People v. Nokes,* 183 Cal.App.3d 468, 228 Cal.Rptr. 119 (1986), the California Court of Appeal considered an argument similar to the one made by the defendant and stated:

> The exercise of discretion to refuse to compel a child victim to submit to a physical examination when the examination could at best produce results equivocal on a defendant's "innocence" should not be disturbed unless the exercise of discretion has been so arbitrary and capricious that no reasonable court could have made such a finding.

*Id.,* at 481, 228 Cal.Rptr. at 127. The reasoning of the *Nokes* court is applicable to this case. The record indicates that even if evidence of ongoing sexual abuse was found, it would not prove that the defendant did not sexually abuse R.S. previously. Any evidence discovered by a second examination of R.S. would be speculative and "could at best produce results equivocal on the defendant's 'innocence.' " *Id.* Accordingly, we hold that the trial court applied the proper balancing test and did not abuse its discretion in denying the defendant's motion for a second physical examination.

The judgment of the court of appeals is reversed.

---

1. The record indicates that the trial court recognized that the defendant's right to discovery must be weighed against the victim's privacy interest. In weighing these competing interests, the court considered Dr. Wilkinson's testimony as to the nature of the examination and the possible benefits to be obtained, and concluded that the benefits were "not so pressing or persuasive" as to require the court to grant the motion. The court, in its denial of defendant's motion, found:

> [T]he benefits that could possibly be derived from another physical examination are one,

speculative, and two, simply this Court does not believe that they would in fact show anything beneficial [to Chard] that could conceivably be presented at the time of the trial in this case.

> Further, the Court is satisfied that upon cross-examination, properly conducted appropriate inquiry into this area could be made. And if, indeed, some third party has been perpetrating assaults on this child, this child presumably is articulate enough to let everyone know that.

ERICKSON, J., concurs in part and dissents in part.

ROVIRA, C.J., and LOHR, J., do not participate.

Justice ERICKSON concurring in part and dissenting in part.

Richard Chard was found guilty by a jury of five counts of aggravated incest. The trial court sentenced Chard to fourteen years imprisonment. I agree with the standard created by the majority to determine whether a minor victim of a sexual assault can be required to submit to a physical examination and therefore concur in part. However, I dissent in part because the trial court did not apply the standard which this court has now created. I would remand for a new hearing to determine whether the denial of the defendant's motion for a medical examination under the new standard should have been granted. If the motion is granted, a new trial is required.

R.S., the defendant's daughter, lived with her mother and stepfather in California. The defendant father lived in Steamboat Springs, and had summer visitation privileges with R.S. in 1986. Not long after R.S. returned to California, she complained of pain in her "tutu" (vagina). Her mother found evidence of sexual abuse but did not take R.S. to a doctor for more than six months. When a medical examination was made, it was discovered that both the vagina and anal orifices were enlarged. This medical examination and a subsequent psychological examination resulted in the filing of charges against the defendant.

Prior to trial, the defendant filed a motion to require R.S. to undergo a second physical examination. The defendant denied that he had assaulted his daughter and contended that such an examination was necessary to prepare his defense because the only examination of R.S. was conducted a full six months after the incident allegedly occurred. The defendant contended that the sexual assaults were committed by R.S.'s stepfather. A second physical examination may have produced evidence of whether R.S. was the victim of continuing sexual abuse, and would have

been relevant to the question of whether the defendant or the stepfather had committed the abuse.

After hearing the testimony of an expert witness, the trial court denied the defendant's motion, concluding that the benefits to be derived from the physical examination of R.S. were too speculative. The court did not, however, as the majority states, weigh the competing interests and conclude that the trauma and embarrassment to R.S. would outweigh any benefits the defendant might obtain from the examination.

The majority sets forth a new standard for determining whether a trial court should order an involuntary physical examination of a minor victim of a sexual assault at the request of the accused. The standard announced by the majority was not applied by the trial court. The court of appeals concluded that the denial of the defendant's motion for a physical examination required reversal and a new trial. In my view, the new standard requires that we remand this case to the trial court for a new hearing on the defendant's motion to have R.S. submit to a physical examination. We cannot speculate on how the trial court would have ruled if it had applied the newly created standard or test. *Bond v. District Court,* 682 P.2d 33, 40 (1984); *see also Cacic v. Cacic,* 164 Colo. 103, 106, 432 P.2d 768, 769 (1967) (not the function of the supreme court to search the record and supply findings); *Carpenter v. Donohoe,* 154 Colo. 78, 80–81, 388 P.2d 399, 401 (1964) (same); *Risbry v. Swan,* 124 Colo. 567, 580, 239 P.2d 600, 607 (1951) (supreme court may not usurp trial court's prerogative to make findings and draw conclusions).

I would therefore direct the court of appeals to remand the case to the trial court with directions to allow the defendant to present evidence demonstrating the compelling need for a physical examination of R.S. If the trial court concludes, applying the new standard, that the defendant is not entitled to have R.S. submit to a physical examination, the judgment and sentence should be affirmed. However, if the trial

court determines that the defendant's motion should have been granted, a new trial should be granted.

Accordingly, I concur in part and dissent in part.