FILED

07/22/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 24, 2025

**STATE OF TENNESSEE v. SENTRELL PITTMAN**

**Appeal from the Criminal Court for Shelby County**
**No. 23-01246      Jennifer Fitzgerald, Judge**

_____

**No. W2024-00807-CCA-R3-CD**

_____

Defendant, Sentrell Pittman, was indicted by the Shelby County Grand Jury for one count each of rape of a child, aggravated sexual battery, and rape. A jury convicted Defendant as charged, and following a sentencing hearing, the trial court imposed an effective thirty-year sentence. Defendant appeals, arguing that: 1) the evidence was insufficient to support his convictions; 2) the trial court erred in denying Defendant's motion to compel the victim to submit to a mental evaluation; 3) the trial court erred in denying Defendant's motion to allow the jury to visit the scenes of the incidents; 4) the trial court erred in denying Defendant's motion to dismiss the indictment based on the State's violation of *State v. Ferguson*; and 5) the trial court erred in denying Defendant's motion under Tennessee Rule of Evidence 412 seeking to allow cross-examination of the victim regarding her prior sexual history. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which MATTHEW J. WILSON and STEVEN W. SWORD, JJ., joined.

Phyllis Aluko, District Public Defender; Harry E. Sayle, III, Assistant District Public Defender (on appeal); Phoebe Gille and Glover Wright, Assistant Public Defenders (at trial), Memphis, Tennessee, for the appellant, Sentrell Pittman.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Venecia Patterson, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Evidence at Trial*

The victim was seventeen years old at the time of Defendant's trial. When the victim was eight or nine years old, she lived with her father, her brother, Defendant, and Defendant's brother in a house on Curtis Street. The victim's father had known Defendant his "whole life" and considered him a cousin. He allowed Defendant to live with him "to keep him out of trouble." The victim's father worked at night, and Defendant and his brother stayed with the victim and her brother while the victim's father was working.

The victim described the layout of the house. Her bedroom was beside the kitchen. One door opened into the kitchen and had a lock, and another door opened into the hallway and did not have a lock. Her brother's bedroom was down the hall and across from her bedroom.

The victim described the first time Defendant sexually abused her. Her father was at work. She was in her brother's room, and her brother was asleep. Defendant came into the room and told the victim to "suck his d[**]k." She refused, and Defendant left the room. She went to her room, and Defendant came into her room five or ten minutes later. He sat on her bed and began rubbing her legs and thighs, and she "moved [her] body parts." Defendant "repeatedly" touched her upper thigh and then touched her vagina. Defendant tried to pull down the victim's pants, and she asked him to stop. Defendant pulled down her pajama pants and got on top of her. The victim testified that Defendant put "the tip" of his penis inside her vagina, and she "began to scream." Defendant stopped when she screamed. She put her clothes back on and cried. She did not disclose the abuse at that time.

On another occasion, when her father was at work, Defendant called the victim into her brother's bedroom. When she entered the room, Defendant "had his penis out and told [her] to touch it[.]" Defendant "grabbed" the victim's hand and "made [her] touch his penis." The victim removed her hand and told Defendant "to stop doing this." While they lived in the Curtis Street residence, Defendant continued to "randomly" touch her body once or twice a week, "but it wasn't penetration." Defendant would always touch her upper thighs.

A former girlfriend of the victim's father, who lived in the Curtis Street residence for part of the time that Defendant lived there, testified that the victim "hated" Defendant and that "she was always mean to him." She said the victim "was always nice" to Defendant's brother. She was "confused" by the victim's behavior towards Defendant

- 2 -

because the victim "got along with everybody." Defendant "would just laugh" when the victim "scream[ed], . . . 'I hate him, I hate him.'" The victim testified she never told her father's former girlfriend about the abuse but that "she noticed."

The victim's mother regained custody of the victim and her brother in 2018. The victim's father moved into his brother's house on Inman Street, where Defendant and Defendant's girlfriend also lived with the girlfriend's son. In March of 2019, when the victim was thirteen years old, she and her brother were visiting their father for the weekend. They went to the zoo with Defendant, his girlfriend, and his girlfriend's son. That evening after they returned home, the victim and her brother were upstairs, and Defendant and his girlfriend were downstairs. The victim's father said the adults stayed downstairs and "had a few drinks and stuff[.]" He did not recall whether he left the house that night, but he did not think he left because he did not have any transportation at that time.

The victim said her father left the house, and she was not sure whether Defendant's girlfriend left, but Defendant came upstairs and was "just on his phone." When the victim's brother went downstairs, Defendant "started to bother" the victim. Defendant began to "touch on" her and told her to "come on, come on." Defendant rubbed her arms and her lower thigh. The victim tried to move away, and Defendant attempted to "bribe" the victim by letting her use his phone. The victim took Defendant's phone, and Defendant began rubbing her upper thigh.

The victim repeatedly asked Defendant to stop, but Defendant continued to touch her. Defendant would only stop when the victim's brother entered the room. When the victim's brother left the room, Defendant began touching her again. She testified that Defendant would not let her leave the room. She said, "every time I got off the bed, he forced me to sit down, you know, he actually put his hands on me to sit down." Defendant eventually "put [the victim] on the bed and started to take [her] pants off." The victim tried to pull her pants up, but when they were around her knees, Defendant penetrated her vagina with the tip of his penis. She testified that it hurt, and she did not disclose the incident to anyone because she was "scared."

The victim's brother recalled the day they went to the zoo. He remembered being in the room with the victim and going downstairs to get something to eat. When he returned, he saw Defendant laying on the bed with the victim, who was "on the phone." He testified that he could not "remember the situation[,]" but he either saw Defendant rub the victim's leg or heard Defendant say he was rubbing the victim's leg.

The victim disclosed the abuse to her mother and father in May of 2020. The victim was fourteen years old at the time. She told her mother that Defendant "had been molesting

- 3 -

her" and that he had been "feeling on," "raping," and "touching" her. When the victim told her father about the abuse, he immediately took the victim to the police station.

On cross-examination, the victim acknowledged that her relationship with her father was "always on and off." When asked if she told her father, "I ain't your child no more[,]" she answered, "No comment."

Lieutenant Angela Tucker investigated the case. She interviewed the victim on June 8, 2020. The victim's father brought her to the interview. The victim "was very sad."

Defendant did not testify or present any other proof at trial. The jury convicted Defendant as charged, and the trial court sentenced him to an effective thirty-year sentence. Defendant filed a motion for new trial, which the trial court denied, and Defendant timely appeals.

*Sufficiency of the Evidence*

Defendant contends the evidence at trial was insufficient to sustain his convictions. Defendant does not challenge any specific element of the offenses for which he was convicted. Rather, Defendant argues that the only evidence against him was "the equivocal and contradictory testimony" of the victim. The State asserts the victim's testimony alone was sufficient to support all of Defendant's convictions.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)); *see* Tenn. R. App. P. 13(e). When this Court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citing *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

"In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (citing *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973); *Marable v. State*, 313 S.W.2d 451, 456-58 (Tenn.

- 4 -

1958)). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (quoting *Marable*, 313 S.W.2d at 457). This Court may not substitute its inferences for those drawn by the trier of fact in cases involving circumstantial evidence. *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011) (citing *State v. Lewter*, 313 S.W.3d 745, 748 (Tenn. 2010)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Sutton*, 166 S.W.3d 686, 689 (Tenn. 2005)).

The jury convicted Defendant of one count each of rape of a child, aggravated sexual battery, and rape. As relevant here, rape is unlawful sexual penetration of a victim by the defendant when force or coercion is used to accomplish the act. T.C.A. § 39-13-503(a)(1). "Rape of a child is the unlawful sexual penetration of a victim by the defendant . . . if the victim is more than eight (8) years of age but less than thirteen (13) years of age." *Id*. § -522. "'Sexual penetration' means . . . any intrusion, however, slight, of any part of a person's body or of any object into the genital . . . openings of the victim's . . . body." *Id*. § -501(7). Aggravated sexual battery includes "unlawful sexual contact with a victim by the defendant or the defendant by a victim . . . [when t]he victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4). "Sexual contact includes . . . the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" *Id*. § -501(6). Intimate parts include "the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" *Id*. § -501(2).

With regard to the count of child rape, there was sufficient evidence for a rational trier of fact to find that Defendant penetrated the victim's vagina with his penis when she was eight or nine years old in her bedroom at the house on Curtis Street. Defendant entered the victim's brother's bedroom while the victim was in the room and told the victim to "suck his d[**]k." She refused and went to her bedroom. Defendant entered the room five to ten minutes later, pulled down the victim's pajama pants, and penetrated her vagina with the tip of his penis.

There was also sufficient evidence to establish that Defendant raped the victim when he penetrated the victim at the Inman Street residence in March of 2019, when the victim was thirteen years old, following their trip to the zoo. That night, Defendant "bribe" the victim with the use of his phone while rubbing her upper thigh. The victim testified that while she resisted, Defendant pulled her pants down and penetrated her vagina.

Regarding the count of aggravated sexual battery, the victim testified about an incident that occurred when she was eight or nine years old. She said Defendant called her into her brother's bedroom, exposed his penis, grabbed the victim's hand, and forced her to touch his penis.

Importantly, a minor's testimony regarding sexual contact is sufficient to support a conviction for a sexual offense. *State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003); *State v. Bonds*, 189 S.W.3d 249, 256 (Tenn. Crim. App. 2005) ("It is well-settled law in Tennessee that the testimony of a victim, by itself, is sufficient to support a conviction."); *State v. Qualls*, No. W2019-01083-CCA-R3-CD, 2020 WL 4346803, at *3 (Tenn. Crim. App. July 28, 2020) (concluding that testimony of the victim was sufficient to establish the essential elements of aggravated sexual battery), *no perm. app. filed*. Thus, the victim's testimony alone was sufficient to establish the essential elements of rape of a child, aggravated sexual battery, and rape. Additionally, the victim's mother and father both testified that the victim disclosed to them that Defendant had sexually abused her. The victim's brother corroborated her testimony that Defendant touched her thighs at the Inman Street residence.

Defendant asserts that the evidence is insufficient because there were no witnesses to the abuse, no physical evidence of the abuse, the victim delayed disclosing the abuse, and the abuse could not have occurred as the victim described without anyone witnessing it. However, we decline to reweigh the victim's credibility. The evidence was sufficient to support Defendant's convictions. He is not entitled to relief on this issue.

*Motion to Compel Victim Mental Evaluation*

Defendant contends that the trial court erred by denying his request to order a psychological evaluation of the victim. The State asserts that Defendant has waived consideration of the issue due to Defendant's inadequate briefing, or in the alternative, Defendant has not shown a compelling reason for the victim to undergo an evaluation.

Initially, we observe that the argument section of Defendant's brief as it relates to this issue contains no citations to the record. Tennessee Rule of Appellate Procedure 27(a)(7) requires the argument section of an appellant's brief include "appropriate references to the record." Tenn. R. App. P. 27(a)(7). Rule 10(b) of the Rules of the Court of Criminal Appeals similarly provides that "[i]ssues which are not supported by . . . appropriate references to the record will be treated as waived." Tenn. Ct. Crim. App. R. 10(b). Defendant asserts that a text message sent by the victim to her father casts "[s]ubstantial doubt" on the victim's sanity, but Defendant has not identified the text

message to which he refers nor provided any argument for his claim. Other than a broad assertion that the trial court's denial of his motion to compel an evaluation of the victim violated his constitutional rights and deprived him the ability "to demonstrate how [the victim]'s mental state affects her ability to tell the truth," Defendant offers no argument or citations to the record. Defendant has waived consideration of this issue.

Waiver notwithstanding, Defendant has not demonstrated a compelling reason to order the victim to undergo a psychological evaluation. A trial court should not require a sex abuse victim to undergo a psychological examination unless the "most compelling of reasons" are established by the accused. *Forbes v. State*, 559 S.W.2d 318, 321 (Tenn. 1977); *State v. Ballard*, 714 S.W.2d 284, 287 (Tenn. Crim. App. 1986). The phrase "compelling reasons" includes situations "where substantial doubt is cast upon the victim's sanity, or where there is a record of prior mental disorders or sexual fantasies, or where the story is incredible, and even in these situations, only if there is little or no corroboration to support the charge." Consequently, a trial court should exercise its discretion sparingly when ruling upon a motion to require a victim to undergo a psychological examination in a sexual abuse prosecution. *Forbes*, 559 S.W.2d at 321.

No evidence was presented at trial that would call the victim's sanity into question. Additionally, there was no evidence to suggest the victim had an existing mental disorder that would cause her to fabricate the allegations against Defendant. The victim was subject to cross-examination by defense counsel. The trial court correctly found that the inconsistencies in the victim's testimony did not present a "compelling reason" to require the victim to undergo a psychological evaluation. Defendant is not entitled to relief on this issue.

*Jury View*

Defendant challenges the trial court's denial of his motion to allow the jury to view the houses where the incidents occurred. Defendant argues the jury "was unable to appreciate the size of the home, . . . and evaluate the reliability and credibility of the testimony regarding the location of the incident[.]" The State responds that Defendant has waived the issue due to inadequate briefing and that he has not shown that a visit to the crime scenes was necessary. We agree with the State.

Again, Defendant has failed to provide any citation to the record and makes only a broad assertion that his constitutional rights were violated by the trial court's denial of his request to allow the jury to view the homes where the sexual abuse occurred. The argument section of Defendant's brief on this issue does not contain any citation to the record, nor does he state how the trial court's ruling on the issue was improper. Defendant has

therefore waived consideration of the issue on appeal. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

In any event, Defendant has not shown a particularized need for the jury to visit the crime scenes. Whether to allow a jury view of the crime scene is a question for the sound discretion of the trial court, and the trial court's decision will not be disturbed on appeal absent a clear showing of abuse of that discretion. *Boyd v. State*, 475 S.W.2d 213, 222 (1971). This Court has noted that "a view by the jury is rare in civil cases and rarer still in criminal trials." *State v. Barter*, 874 S.W.2d 653, 655 (Tenn. Crim. App. 1994).

In his pretrial motion to allow the jury to view the crime scenes, Defendant argued, "a jury view of the alleged crime scenes will shed light on the reliability and credibility of the alleged victim's testimony that she was sexually abused while others were present." Defendant asserted that the two homes in which the victim alleged the crimes occurred were small, and "a scene visit will allow the jury to see and fully comprehend the distance between the alleged victim and other occupants."

At trial, defense counsel introduced a photograph of the Curtis Street residence and a photograph and a floorplan of the Inman Street residence. Defense counsel questioned the victim about the layout of both houses and asked whether her brother responded when she screamed during the first instance of penetration at the Curtis Street residence. The victim testified that she did not scream at the Inman Street residence. During closing argument, defense counsel called the victim's credibility into question by pointing out that none of the other residents in either home heard the victim.

Defendant has not shown that the trial court's refusal to allow the jury to visit the houses where the rapes occurred was an abuse of discretion. He is not entitled to relief on this issue.

*State's Duty to Preserve Evidence*

Defendant contends that the trial court should have dismissed the indictments pursuant to *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), because the State failed to preserve the victim's father's cell phone, which Defendant asserts contained potentially exculpatory text messages between the victim and her father. The State responds that Defendant has waived the issue due to inadequate briefing and that despite waiver, Defendant has not shown the State had a duty to preserve the father's cell phone.

In *Ferguson*, our supreme court "explained that the loss or destruction of potentially exculpatory evidence may violate a defendant's right to a fair trial." *State v. Merriman*,

410 S.W.3d 779, 784 (Tenn. 2013) (citing *Ferguson*, 2 S.W.3d at 915-16). The court in *Ferguson* adopted a balancing approach in which a trial court must determine "[w]hether a trial, conducted without the [lost or] destroyed evidence, would be fundamentally fair." *Id.* at 785 (quoting *Ferguson*, 2 S.W.3d at 914).

When a defendant raises a *Ferguson* claim, a trial court must first "determine whether the State had a duty to preserve the evidence." *Merriman*, 410 S.W.3d at 785. "[T]he State's duty to preserve evidence is limited to constitutionally material evidence described as 'evidence that might be expected to play a significant role in the suspect's defense.'" *Id.* (quoting *Ferguson*, 2 S.W.3d at 917). To meet this constitutional materiality standard, "the evidence must potentially possess exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (footnote omitted).

If the proof demonstrates the existence of a duty to preserve evidence and further shows that the State has failed in that duty, a court must proceed with a balancing analysis involving consideration of the following factors: "(1) [t]he degree of negligence involved; (2) [t]he significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) [t]he sufficiency of the other evidence used at trial to support the conviction." *Id.*

Once again, Defendant's argument as to this issue is inadequate. Defendant's brief contains no citations to the record. Defendant does not identify the trial court's ruling regarding the issue, simply stating that "[t]he [c]ourt erred in denying [Defendant]'s motion in limini [sic] to dismiss the indictment against him for failure to fully preserve potentially exculpatory text messages between [the victim] and [her father]." Defendant does not explain why the State had a duty to preserve text messages between the victim and her father and gives only a conclusory statement that "the State did have a duty to preserve the missing cell phone but failed to do so."

Despite the inadequacies, Defendant is not entitled to relief on this issue. The record shows that Defendant filed a motion under seal to dismiss the indictment based on the State's failure to preserve the victim's father's cell phone. At a hearing on the motion, the State asserted it never collected the cell phone, but rather the victim's father sent a photo of a text message the victim sent him to Lieutenant Tucker. The State further argued that Defendant failed to show the evidence was potentially exculpatory, and the evidence was available to Defendant through other means.

In denying Defendant's motion, the trial court found that the State had no duty to preserve the cell phone or conduct a forensic analysis of the phone because investigators

never had possession of the phone. The court commented, "while, perhaps, maybe they should have in their investigation, went and looked at, you know, tried to get the phone or get some text messages, the law also says that you -- you can't dictate how the police do their investigation."

"In *Ferguson*, the Tennessee Supreme Court did not impose a duty upon the State to collect evidence but addressed the State's duty to preserve evidence." *State v. Craighead*, No. M2017-01085-CCA-R3-CD, 2018 WL 5994974, at *9 (Tenn. Crim. App. Nov. 15, 2018), *perm. app. denied* (Tenn. Mar. 28, 2019). The "State is not required to investigate cases in any particular way." *State v. Brock*, 327 S.W.3d 645, 698 (Tenn. Crim. App. 2009). Thus, the trial court correctly found that the State did not have a duty to collect the phone or to perform a forensic analysis of the phone because it was never in the State's possession. Defendant is not entitled to relief on this issue.

*Rule 412 Evidence*

Defendant contends the trial court erred by prohibiting him from cross-examining the victim about her sexual history and medical history. The State again argues that Defendant has waived the issue for inadequate briefing and alternatively that the trial court did not abuse its discretion.

The argument section of Defendant's brief on this issue consists entirely of the following:

> Application of the law to the trial court's findings of fact is a question of law subject to de novo review. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

> The Court erred in denying [Defendant]'s motion under Tennessee Rule of evidence 412. Defense wanted to cross[-]examine [the victim] regarding her sexual history and medical history regarding her knowledge of sexual matters, and particularly for impeachment. Her credibility was vital for the defense as the whole case was built on it. There was no corroboration of her unbelievable account. Denial of that opportunity violated [Defendant]'s ability to present a defense as guaranteed by the United States Constitution and the Constitution of Tennessee.

Despite the obvious inadequacies in his brief, including his misstatement of the law regarding the proper standard of review, Defendant is not entitled to relief on this issue. Tennessee Rule of Evidence 412 governs the admissibility of evidence about a sex crime

victim's prior sexual acts.  According to the Advisory Commission Comments to Rule 412, these guidelines have been established to maintain "a balance between the paramount interests of the accused in a fair trial and the important interests of the sexual assault victim in avoiding an unnecessary, degrading, and embarrassing invasion of sexual privacy."  Rule 412 is a rule of relevance, *see State v. Brown*, 29 S.W.3d 427, 430 (Tenn. 2000), and we will not overturn a trial court's Rule 412 ruling absent an abuse of discretion.  *State v. Sheline*, 955 S.W.2d 42, 46 (Tenn. 1997).

Under Rule 412, "[e]vidence of specific instances of a victim's sexual behavior is inadmissible unless" it is "[r]equired by the Tennessee or United States Constitution, or" the defendant offers the evidence "on the issue of credibility of the victim, provided the prosecutor or victim has presented evidence as to the victim's sexual behavior, and only to the extent needed to rebut the specific evidence presented by the prosecutor or victim." Tenn. R. Evid. 412(c)(1)-(2).  "If the sexual behavior was with the accused," evidence may also be admissible "on the issue of consent."  Tenn. R. Evid. 412(c)(3).  Evidence of sexual behavior with a person other than the accused may be admissible "to rebut or explain scientific or medical evidence, or to prove or explain the source of semen, injury, disease, or knowledge of sexual matters."  Tenn. R. Evid. 412(c)(4)(i)-(ii).  This evidence also may be admissible "to prove consent if the evidence is of a pattern of sexual behavior so distinctive and so closely resembling the accused's version of the alleged encounter . . . that it tends to prove" either "that the victim consented to the act charged or behaved in such a manner as to lead the defendant reasonably to believe that the victim consented." Tenn. R. Evid. 412(c)(4)(iii).

In denying Defendant's motion, the trial court ruled that evidence of the victim's prior sexual conduct did not fall under any of the exceptions of Rule 412.  The State asserted that it did not intend to present, and indeed did not present at trial, evidence of the victim's sexual behavior.  Therefore, the evidence was not admissible to rebut the State's evidence.  Nor did the State introduce any medical or scientific proof.  Regarding consent, the trial court correctly found that "consent is not a[n] issue."  A minor is "legally incapable of consenting to sexual penetration by the defendant."  *State v. Steele*, No. M2023-00695-CCA-R3-CD, 2024 WL 2783712, at *5 (Tenn. Crim. App. May 30, 2024), *no perm. app. filed*.  Nor may a minor consent to aggravated sexual battery.  *See State v. Jones*, 889 S.W.2d 225, 227 (Tenn. Crim. App. 1994) (stating that "consent is never a defense to a sex offense when the victim is less than thirteen years of age").

Finally, the evidence was not relevant to explain the source of semen, injury, disease, or knowledge of sexual matters.  The trial court did not abuse its discretion in excluding evidence of the victim's sexual conduct.  Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.


s/Timothy L. Easter
TIMOTHY L. EASTER, JUDGE