244 So.2d 148 (1971)
Nathan Donald DINKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 69-599.
District Court of Appeal of Florida, Fourth District.
February 17, 1971.
*149 Walter N. Colbath, Jr., Public Defender, and Norman J. Kapner, Asst. Public Defender, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Rodney Durrance, Jr., Asst. Atty. Gen., West Palm Beach, for appellee.
OWEN, Judge.
Appellant was indicted for rape but his jury trial resulted in a conviction of assault with intent to commit rape. The court's denial of two of defendant's pre-trial motions formed the basis of the points raised on this appeal from the judgment.
Prior to trial the defendant filed a motion for an order requiring the prosecutrix to submit to a psychiatric examination. The motion was supported by affidavit of a psychiatrist to the effect that the ends of justice would be served by the court requiring such an examination. The psychiatrist was one of the two who, having been appointed pursuant to F.S. section 917.01, F.S.A., had examined defendant and found him competent to stand trial. The court denied the motion on the grounds that it had no authority to order the alleged rape victim to submit herself to a psychiatric examination. The denial of such motion is assigned as error.
Although appellant contends that it was error for the court to rule that it was without discretion to order the prosecutrix to submit to a psychiatric examination, the real issue is whether the court erred in denying the appellant's motion for an order requiring prosecutrix to submit to a psychiatric examination. We view such as the real question because even should we agree with appellant that the court erred in holding that it had no discretion *150 in the matter, it would not be a basis for reversal unless there was a clear showing that such discretion had been abused.
Our attention has not been directed to any authority in this jurisdiction, whether statute, rule or precedent, giving the court power to require the prosecutrix in a rape prosecution to submit to a psychiatric examination for the purpose of furnishing a possible basis of impeachment. A number of eminent writers have advocated the desirability of the court possessing and mandatorily exercising such power. These writers and their respective works are discussed at length in the opinion by the Supreme Court of California in the case of Ballard v. People, 1966, 64 Cal.2d 159, 49 Cal. Rptr. 302, 410 P.2d 838, and in an annotation entitled "Requiring Complaining Witness in Prosecution for Sex Crime to Submit to Psychiatric Examination" in 18 A.L.R.3d 1433. See also State v. Clasey, 1968, 252 Or. 22, 446 P.2d 116. By statute, F.S. 1969, section 801.161, F.S.A., courts of this jurisdiction have discretionary power, upon motion of a defendant charged under the Child Molester Act, to order a psychiatric examination of the complaining witness before trial. Cf. Wilk v. State, Fla.App. 1969, 217 So.2d 610. But the statute is not reasonably susceptible of being construed as a statutory grant of power to the court to require the prosecutrix in a rape case to submit to psychiatric examination before trial upon request of the defendant.
The qualifications of the text writers whose works on this subject are listed in the above citations are such that we do not take lightly the views which they advocate. Nonetheless, it strikes us as sound, in the absence of either express statutory authority or court rule permitting such, or in the absence of such strong and compelling evidence of mental or emotional instability of the prosecutrix that denial of a psychiatric examination could amount to a denial of due process of law, that the court should not subject the prosecutrix to such an examination. Thus, while we do not expressly reject the concept of the court possessing inherent power to require such an examination under the most compelling of circumstances where it is necessary to insure a just and orderly disposition of the cause, we would discourage the practice in any but the most extreme instances.
In the instant case, there was absolutely no showing that psychiatric examination of the prosecutrix was essential to prevent a manifest miscarriage of justice. At best there existed the affidavit of a psychiatrist who, having examined the defendant and heard his version of the affair, stated that the defendant's version was credible and that from his own professional experience he had found that charges of rape frequently spring from emotional disorders on the part of the alleged victims. His experience, apparently based upon some unknown number of unnamed women complainants interviewed by the psychiatrist under unknown conditions at some unknown date, time and place in the past, could scarcely furnish a valid basis to conclude that the prosecutrix in the instant case was a fit subject for such an examination. The court did not err in denying this motion.
Prior to trial the appellant moved to suppress certain real evidence obtained as a result of a search of the appellant's automobile. The crime occurred on June 16, 1969. When the prosecutrix reported the matter to the police, she described a hunting knife with which appellant had threatened her, the sheath for the knife and a green marine-type fatigue cap which appellant had worn. Two days later appellant was arrested at a dairy near Kissimmee. While he was being brought by the arresting officers to the Orange County Jail in Orlando, they passed a car which was parked beside the road. Appellant acknowledged to the officers at the time that such automobile was his. (He testified later, on the motion to suppress, that he had run out of gasoline while driving to *151 work the morning of his arrest, had parked and locked the car, and had called his wife and her sister to come get him and take him to work; that when they let him out at the dairy he gave his car keys to his wife but gave her no instructions concerning them or the car; that his wife did not drive nor did she have any ownership interest in the car). After the arresting officers determined that the automobile belonged to appellant, arrangements were made for the car to be towed to a local garage for storage and safekeeping. The following morning the sheriff's deputies called appellant's wife and obtained her written consent to a search of the automobile. The officers did not seek appellant's consent nor did they obtain a search warrant. After giving her consent, appellant's wife accompanied the officers to the garage where the vehicle was searched, resulting in the fatigue cap, the sheath, and the knife being found in the car and seized. This was the physical evidence sought to be suppressed. Both the cap and sheath were visible to the officers while standing outside the car, but the knife was under the front seat and was found and seized only after the officers were inside the car.
It is our opinion that this was not an unreasonable search and seizure. The officers conducted the search pursuant to a written consent obtained from appellant's wife prior to the search, and the voluntary nature of such consent is not in issue. It has been held in reference to a dwelling that the husband and wife relationship itself, without more, does not impute authority to one spouse to waive the other's constitutional right to demand a search warrant for the search of his premises. State v. Blakely, Fla.App. 1970, 230 So.2d 698. See also Carlton v. State, 1933, 111 Fla. 777, 149 So. 767. While a dwelling or other premises are not necessarily subject to the same principles of law as an automobile concerning the reasonableness of a warrantless search and seizure, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), it is conceivable that the rationale of the Blakely case and the Carlton case would apply to an automobile. We do not determine that question because in the instant case the wife's authority to consent to the search of the husband's automobile does not need to rest on the husband and wife relationship itself, but rather upon the wife's constructive possession and control of the automobile at the time. Even though she did not drive nor have any ownership interest in the car, appellant's delivery of the keys to his wife absent any restrictions or limitations, placed her in a position where she could exercise dominion and control over the automobile. The search made after obtaining the consent of one who is in control and possession is not unreasonable. It was not error to deny the motion to suppress.
A careful review of the entire record convinces us that appellant was ably represented by counsel at trial and on this appeal and received a trial demonstrably free of error, though the jury's verdict was contrary to appellant's version of the entire episode. The judgment is therefore affirmed.
WALDEN and REED, JJ., concur.