558 So.2d 507 (1990)
The STATE of Florida, Petitioner,
v.
Grover LeBLANC, Respondent.
No. 89-2956.
District Court of Appeal of Florida, Third District.
March 20, 1990.
*508 Robert A. Butterworth, Atty. Gen., and Janet Reno, State Atty., and Lisa Berlow-Lehner, Asst. State Atty., for petitioner.
Ronald S. Guralnick, Miami, for respondent.
Before SCHWARTZ, C.J., and NESBITT and FERGUSON, JJ.
NESBITT, Judge.
Respondent is charged with the sexual battery of his minor stepdaughter, C.A., and his two minor children, B.L.B. and A.L.B. The alleged offenses occurred on July 4, 1987. The respondent is currently charged with four counts of sexual battery, four counts of lewd assault, and three counts of sexual performance by a child in violation of sections 800.04, 794.011(2), and 827.071(2), Florida Statutes (1987). The state seeks the issuance of a writ of certiorari quashing the trial court's order compelling the three minor children to undergo a psychological evaluation. We grant certiorari and quash the trial court's order because the order constitutes a violation of clearly established principles of law resulting in a miscarriage of justice. See State v. Pettis, 520 So.2d 250 (Fla. 1988).
Pursuant to a dependency proceeding, apart from the instant cause, a trial court had ordered that the three children, their mother, her boyfriend, and the respondent be evaluated by a child psychologist. That psychologist conducted evaluations of these individuals in December 1987 and January and February 1988. His findings were detailed in nine written reports, all of which were provided to the respondent.
As to the offenses alleged to have occurred on July 4, 1987, the psychologist concluded that all three children's descriptions of the events were similar. C.A. displayed symptoms consistent with sexual victimization and appeared to be a seriously affected sexual abuse victim. B.L.B. provided a detailed history of sexual victimization by the respondent, dating back three years including acts occurring with his siblings. A.L.B. appeared to fear the respondent and manifested symptoms consistent with sexual abuse. The psychologist concluded that the alleged sexual abuse had actually occurred.
Additionally, as part of the state's investigation of the charges stemming from the July fourth incident, interviews were conducted at the Children's Center, a branch of the State Attorney's office. The state thereafter provided the respondent with access to videotaped interviews of each child. Also, written reports of the Children's Center interviews were furnished to the respondent.[1]
*509 The respondent moved to compel that each victim submit to psychological evaluation by a doctor of respondent's choice. That doctor was not in fact a child psychologist. The trial judge granted respondent's motion, reasoning that if the state was calling the prior court-appointed psychologist to testify that the children manifested sexual abuse symptoms, this was a compelling reason to provide the respondent with a similar opportunity. The trial court ruled that the sole purpose of the defense examination would be to determine whether the children manifested symptoms of sexual abuse.
The state moved for rehearing and proposed that the court hear testimony from two child psychologists and the guardian ad litem concerning the harm which might follow compelling the children to undergo these additional evaluations. The examining child psychologist testified that additional examination would force the children to reexperience the trauma two years after the alleged incident and thus hamper their therapy. The psychologist analogized reexamining the child victims to "an individual who had surgery and this would be reopening the wounds, re-breaking the healed fractures... ." The state proffered that the guardian ad litem would also testify that further examinations were not in the children's best interest. This evidence concerning the detriment to the children was uncontroverted.
The trial court ruled that the respondent would be deprived due process if denied the right to have his psychologist examine each victim. We disagree. Before the denial of a psychological examination can rise to the level of a due process violation, there must be strong and compelling evidence of the victim's mental or emotional instability. See Dinkins v. State, 244 So.2d 148, 150 (Fla. 4th DCA 1971). Absent such evidence, a court should not subject the victim to examination. The court, in Dinkins, expressly discouraged trial courts ordering psychiatric examinations of complaining witnesses, limiting the practice to "the most extreme instances." Id.
In State v. Coe, 521 So.2d 373 (Fla. 2d DCA 1988), the defendant similarly argued for a victim's psychological examination. Following the rule of Dinkins, the second district searched the record for evidence of psychological problems that might affect the victim's credibility. Finding no such strong or compelling evidence, the court quashed the trial court's order compelling the victim's examination, concluding that examination was not required to prevent a miscarriage of justice.
A recent opinion of the Fourth District quashing a trial court's order compelling a physical examination observed the defendant's heavy burden requiring extreme and compelling circumstances before requiring an examination. In State v. Drab, 546 So.2d 54 (Fla. 4th DCA), review denied, 553 So.2d 1164 (Fla. 1989), the court found no allegation of impropriety as to the victim's voluntary examination. Further, the defendant failed to allege any suspect scientific observations from the victim's prior examination. Instead, the defendant was concerned mainly with the relative weight that would be attributed to the state's expert who had examined the victim. The fourth district denied the due process challenge finding no manifest injustice in denying the defendant the opportunity to examine the victim. See State v. Diamond, 553 So.2d 1185 (Fla. 1st DCA 1988) (order compelling physical examination of complaining child witness in sexual battery case constituted violation of clearly established principle of law resulting in miscarriage of justice).
There must be compelling evidence to question a victim's veracity before requiring an involuntary examination. A compulsory psychological examination is a significant invasion of the victim's privacy. *510 As a prerequisite to an order that a victim submit to psychological examination, a defendant must make a serious showing that due to mental or emotional incapacity, a victim's allegations may be spurious.
The respondent at bar made no such showing. The record is devoid of any evidence of the type of mental or emotional instability on the part of the three victims that might call into question the sincerity of their allegations. The respondent did not question the expert's credentials or the scientific basis for his conclusions. The respondent merely asserts that he has the right to duplicate the court-appointed psychologist's efforts without demonstrating justification for this extreme measure.
Apart from the respondent's failure to set forth evidence of the victims' emotional instability, far less intrusive means were available for evaluating the victims, thus, refuting the claim of manifest injustice. Respondent chose to forego deposing the court-appointed child psychologist. Additionally, he was provided with the psychologist's reports. Further, by amended discovery, the respondent was furnished with the reports of an interviewer at the Children's Center. The respondent also had access to the videotaped interviews conducted at the Children's Center. All of these reports and videotapes could have been provided in lieu of reexamining the children.
Finally, the record clearly established that any further examination of the children would not be in their best interests. Clearly, the uncontroverted potential detriment to the children vastly outweighs the speculative additional information that might have been gleaned from the victims' re-examination years after the alleged incident.
Accordingly, common law certiorari is granted and the order compelling the psychological evaluations of C.A., B.L.B., and A.L.B. is quashed.
NOTES
[1] The state was also ordered to produce the psychologist's audiotaped interviews of the children. The state did not comply prior to the court's final order compelling the children to undergo psychological examinations; however, the respondent has since been furnished the taped interviews.