EL PUEBLO DE PUERTO RICO, recurrido, *v.* MAN SHARMA, peticionario.

*Número:* CC-2003-267          *Resuelto:* 31 de enero de 2006

*Antonio Adrover Robles*, abogado de la parte peticionaria; *Eva Samantha Soto*, abogado de la parte recurrida.

SENTENCIA

El Ministerio Fiscal presentó un pliego acusatorio contra el peticionario Man Sharma por éste alegadamente ha-

ber infringido el Art. 105 del Código Penal de Puerto Rico de 1974 (33 L.P.R.A. sec. 4067) al cometer actos lascivos e impúdicos contra una menor de siete años de edad.

Luego de la celebración de la correspondiente vista preliminar y antes de la celebración del juicio, el peticionario presentó una moción en solicitud de evaluación psiquiátrica de la menor perjudicada. El Ministerio Fiscal se opuso. El Tribunal de Primera Instancia declaró "con lugar" dicha solicitud.

Inconforme, el Estado acudió en revisión ante el entonces Tribunal de Circuito de Apelaciones. El mencionado foro judicial emitió una sentencia revocatoria, que ordenó la devolución del caso al foro de instancia para la celebración del juicio.

Insatisfecho, Man Sharma acudió ante este Tribunal. Expedimos el recurso.

## I

Se confirma la sentencia recurrida; ello por razón de estar *igualmente dividido* el Tribunal.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Fuster Berlingeri emitió una opinión en conformidad. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión en conformidad, a la cual se unió la Juez Asociada Señora Fiol Matta. El Juez Asociado Señor Rebollo López emitió una opinión disidente, a la cual se unieron el Juez Presidente Señor Hernández Denton y el Juez Asociado Señor Rivera Pérez.

(*Fdo.*) Aida I. Oquendo Graulau
*Secretaria del Tribunal Supremo*

— O —

Opinión de conformidad del Juez Asociado Señor Fuster Berlingeri.

En el caso de autos, la víctima menor de edad fue sometida a *varias pruebas psicológicas* de distinta índole *antes* de la fecha original fijada para la celebración del juicio del acusado, que está aún pendiente. Una de esas pruebas fue la que se realizó previo a que se llevara a cabo la vista preliminar para acusar, cuyo resultado dio lugar a que el testimonio de la menor para dicha vista fuese recibido a través del sistema de televisión de circuito cerrado. Se utilizó tal sistema para obtener el testimonio referido, porque quedó establecido antes, a satisfacción del foro de instancia, que confrontar a la víctima menor de edad con el imputado en la vista preliminar contemplada podría causarle a la menor *un serio disturbio mental* que, a su vez, podría provocarle *un trauma a largo plazo*. Todo ello podría ocurrir, porque la víctima menor de edad, según el criterio de uno de los psiquiatras que ya la había examinado, presentaba claros síntomas compatibles *con un estado depresivo*.

Es menester señalar que en la vista celebrada ante el foro de instancia para determinar si el testimonio de la menor perjudicada debía recibirse mediante el sistema televisivo de circuito cerrado, el perito psiquiátrico *de la defensa* estuvo presente, en calidad de asesor.

Todo lo anterior surge claramente del expediente de este caso. Es en el contexto de lo relatado antes que debemos evaluar la petición del acusado de realizar aún otra evaluación psiquiátrica de la menor perjudicada.

A poco que se reflexione sobre el particular, es evidente que el foro apelativo resolvió correctamente el asunto en cuestión. Determinó dicho foro, *inter alia*, que al sopesar los intereses en conflicto, el perjuicio que se le podría causar a la menor al someterla a otra evaluación psiquiátrica —a ser realizada por un perito del acusado— sería mayor

que el que sufriría dicho acusado por denegársele la eva-
luación que interesa realizar. Concluyó el foro apelativo
que no existía aquí la *"clara necesidad"* requerida para or-
denar la evaluación psicológica de la menor que el acusado
interesaba realizar.

Estoy conforme con el dictamen referido del Tribunal de
Apelaciones, por las razones que he expresado antes como
por las que formulé más recientemente en mi opinión disi-
dente sobre este mismo tema en *Pueblo v. Ríos Alonso*, 156
D.P.R. 428 (2002), a la que se unieron el entonces Juez
Presidente Señor Andréu García y la entonces Juez Aso-
ciada Señora Naveira de Rodón.

No es necesario repetir ahora todos los criterios perti-
nentes expresados en la referida opinión en *Pueblo v. Ríos
Alonso*, supra. Basta con resaltar la imperiosa necesidad
que existe, en casos como el de autos, de evitar en todo lo
posible que la víctima menor de edad que ya sufrió un
grave abuso sexual, pueda sufrir también otra intromisión
que la perjudique al sometérsele a una evaluación psicoló-
gica por un perito del acusado.

Para proteger en todo lo posible a la víctima menor de
edad del caso de autos, son necesarias dos medidas. En
primer lugar, el acusado debe demostrarle *concretamente*
al foro de instancia, en una vista celebrada con ese propó-
sito, *por qué no es suficiente* que la defensa se prepare para
el juicio con su propio examen pericial de los informes y
estudios que tenga el Ministerio Público resultantes de las
varias evaluaciones psicológicas que ya se le han realizado
a la menor. Es decir, la defensa debe tener acceso a las
evaluaciones psiquiátricas de la víctima realizadas para el
Ministerio Público, y a base de ellas, debe demostrar con-
cretamente por qué es necesaria otra evaluación psicoló-
gica de la menor que satisfaga los intereses de la defensa.

Debe de tenerse en cuenta que la norma fundamental
que aplica, que exige que el acusado demuestre una *"clara
necesidad"* para justificar la evaluación psicológica de la

menor —quien es víctima del delito de abuso sexual que se le imputa— tiene *dos vertientes*. En primer lugar, la evaluación en cuestión debe ser claramente necesaria en el sentido de que dicha evaluación sea *pertinente* a la defensa que el acusado ha de presentar; es decir, que el resultado de la evaluación pueda constituir un elemento favorable en la teoría exculpatoria del acusado. En segundo lugar, la evaluación debe ser claramente necesaria en el sentido de que *no hay otro modo de obtener la información que la defensa interesa tener.*

No se ha demostrado adecuadamente en el caso de autos lo segundo: que el acusado necesita una nueva evaluación psicológica de la menor para obtener la información que le permita intentar rebatir que la menor padece del síndrome de niño abusado sexualmente. La defensa no ha explicado *concretamente*, más allá de sus meras alegaciones conclusorias, por qué no le sirven para sus propios propósitos los informes y estudios que existen sobre las otras evaluaciones psicológicas que ya se han realizado a la víctima menor de edad. Hasta que no demuestre que son insuficientes las evaluaciones anteriores, no ha satisfecho la norma de "clara necesidad".

En segundo lugar, si la defensa llegara a demostrar lo indicado antes, entonces la evaluación adicional a petición del acusado debe realizarla *un perito nombrado por el tribunal*, a quien la defensa le plantee lo que crea menester respecto al particular. Pero, luego de haber escuchado lo que tenga que decir la defensa, el perito del tribunal será quien deba realizar la evaluación en cuestión, según crea procedente para salvaguardar la integridad emocional y la intimidad de la menor.

En mi criterio, sólo con las dos medidas mencionadas antes se establece un balance adecuado entre derecho del acusado a una legítima defensa y el derecho de la perjudicada menor de edad a su intimidad e integridad y a no ser victimizada una vez más.

Como estas dos indispensables medidas no le han sido solicitadas por el acusado al foro de instancia en el caso de autos, es correcta la determinación del Tribunal de Apelaciones en la que se deniega la solicitud del acusado para realizar de su parte otra evaluación psicológica más de la víctima menor de edad de este caso.

— O —

Opinión de conformidad de la Juez Asociada Señora Rodríguez Rodríguez.

Estoy conforme con el resultado de la sentencia dictada por el Tribunal de Apelaciones en el caso de autos, la que se confirma mediante la sentencia que hoy dictamos por estar igualmente dividido este Tribunal.

Escribo para señalar que estimo que en casos como el de autos se requiere sopesar los criterios identificados en *Pena v. Pena*, 164 D.P.R. 949 (2005), antes de determinar si procede o no someter a una menor de edad, víctima de delito sexual, a unas pruebas sicológicas por parte del acusado, adicionales a las que ya fuera sometida por el Ministerio Público. Sólo de esta forma se logra "minimizar cualquier efecto perjudicial que las constantes evaluaciones [sicológicas] tiene sobre los menores". Íd., pág. 963.

Ponderando los factores enumerados en *Pena v. Pena*, ante, a la luz de los hechos particulares de un caso, es que se logra establecer un balance adecuado entre el interés del acusado de defenderse en un proceso criminal llevando a cabo un descubrimiento de prueba adecuado, frente al derecho a la intimidad de los menores y al interés apremiante del Estado de velar por la salud física y emocional de un menor. Los jueces debemos velar por que en los procesos que se ventilen ante los tribunales en los que esté involucrado un menor víctima de delito sexual, el proceso en sí no le revictimice. Ello se hace más necesario en casos como el de autos, donde la condición mental de la víctima

no está relacionada con un elemento esencial del delito imputado. *Cf., Pueblo v. Ríos Alonso*, 156 D.P.R. 428 (2002).

Finalmente, debo señalar que estimo que el hecho que en casos de esta naturaleza el Ministerio Público someta a una víctima a una evaluación sicológica, no hace un nuevo examen menos invasivo y potencialmente perjudicial a la salud emocional de la menor. A mi juicio, ese factor no puede ser considerado como un criterio para sostener que el derecho a la intimidad o a la integridad de la menor no se verá afectado autorizando los nuevos exámenes.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López, a la cual se unen el Juez Presidente Señor Hernández Denton y el Juez Asociado Señor Rivera Pérez.

Por hechos alegadamente ocurridos el 31 de agosto de 2002, el acusado peticionario Man Sharma[1] fue acusado por el delito de actos lascivos o impúdicos,[2] contemplado en el Art. 105 del Código Penal de Puerto Rico de 1974 (33 L.P.R.A. sec. 4067).[3] La alegada víctima de los actos im-

---

[1] El acusado era residente del estado de California.

[2] La acusación disponía lo siguiente:

"... allá o para el 31 de agosto de 2002, en Caguas, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia de Caguas, ilegal, voluntaria, maliciosa, a sabiendas, con la intención criminal y sin intentar consumar acceso carnal cometió un acto lascivo o impúdico contra el ser humano de 7 años de edad ..., consistente en que mediante empleo de fuerza física irresistible el aquí imputado le tocó el área de los senos y la besó en el área de la boca en varias ocasiones". Acusación enmendada, pág. 1.

[3] Dicho artículo disponía que cometía actos lascivos o impúdicos

"[t]oda persona que sin intentar consumar acceso carnal cometiere cualquier acto impúdico o lascivo con otra [y que] será sancionada con una pena de reclusión según más adelante se dispone si concurrieran cualesquiera de las siguientes modalidades:

"(a) Si la víctima fuere menor de 14 años." 33 L.P.R.A. sec. 4067.

putados fue la menor C.F.G. quien, al momento de los hechos, tenía siete años de edad.

Posteriormente, y antes de celebrarse la vista preliminar, el Ministerio Fiscal presentó una moción ante el foro primario para solicitar que el testimonio de la menor fuera celebrado a través del sistema televisivo de circuito cerrado. Como consecuencia de la referida solicitud, se celebró la correspondiente Vista de Determinación de Necesidad, conforme lo dispone la Regla 131.1(3) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.[4] En dicha vista, el Estado utilizó el testimonio del Dr. Raúl López Menéndez, psiquiatra forense. Surge de la resolución del foro primario —en la que se declaró "ha lugar" la referida solicitud— que el doctor López Menéndez testificó que había evaluado a la menor y que ésta presentaba síntomas compatibles con un estado depresivo, por lo que confrontarla con el imputado podría causarle un serio disturbio mental que, a su vez, podría provocar un trauma a largo plazo. La posición del Estado fue *avalada* por el tribunal.

El 9 de diciembre de 2002 se celebró la vista preliminar. En ésta la menor C.F.G. declaró —vía circuito cerrado— contra el acusado. El foro primario determinó que existía causa probable para acusar. Antes de la celebración del juicio y luego de presentar una moción al amparo de la Regla 95 de Procedimiento Criminal, ante, entre otras co-

---

[4] La Regla 131.1(3) establece, en lo aquí pertinente:

"(3) *Determinación de necesidad.* Para determinar si existe la probabilidad de que el menor sufra disturbio emocional serio que le impida comunicarse efectivamente de tener que testificar frente al acusado, el juez podrá observar e interrogar al menor dentro o fuera del tribunal, así también podrá escuchar testimonio de los padres, encargados, custodios, tutor o defensor judicial del menor y cualquier otra persona, a discreción del juez, que contribuya al bienestar del menor, incluyendo a la persona o personas que hayan intervenido con el menor en un ambiente terapéutico por la naturaleza del delito cometido:

"(a) El acusado, el abogado de la defensa y el fiscal a cargo del caso tendrán derecho a estar presentes cuando el juez escuche testimonio para determinar si autoriza que la víctima menor de edad testifique fuera de la sala donde se ventila el proceso, mediante el sistema de circuito cerrado de una o dos vías.

"(b) Si el juez decide observar o interrogar al menor perjudicado para hacer la determinación acorde con la cláusula (a) de este inciso, estarán presentes el abogado de la defensa y el fiscal a cargo del caso." 34 L.P.R.A. Ap. II.

sas, para obtener información relacionada con las pruebas psicológicas o psiquiátricas a las que fue sometida la menor, *la defensa del acusado presentó una Moción Solicitando Evaluación Psiquiátrica de la Menor Perjudicada.* En ésta sostuvo que en el caso de autos se cumplía el criterio de "clara necesidad" establecido en *Pueblo v. Arocho Soto,* 137 D.P.R. 762 (1994), para los casos en que la defensa de un acusado solicita la evaluación psicológica de un menor víctima de algún delito de abuso sexual. Específicamente, adujo que, como el Ministerio Público utilizó prueba pericial para establecer que C.F.G. presentaba las características comunes que presentan las personas que han sido objeto de abuso sexual, *el acusado debería tener la misma oportunidad, ya que su necesidad de una defensa adecuada sobrepasa el posible perjuicio a la intimidad de la víctima*; alegó, además, que tenía *serias dudas* sobre si la menor presentaba las características del síndrome del niño abusado sexualmente.(⁵) Finalmente, arguyó que, como la menor había sido objeto de *evaluaciones previas* por parte del Ministerio Público, *el temor de que la naturaleza intimidante y embarazosa de un examen psicológico aumente el trauma de la menor no estaba presente.*(⁶)

El Estado se opuso a la evaluación psiquiátrica solicitada expresando, entre otras cosas, que el perito contratado por la defensa estuvo presente, en calidad de asesor, en la vista de necesidad previamente celebrada. Sostuvo que, contrario a lo expresado por el acusado, el testimonio del doctor López Menéndez en la vista de necesidad *no* versó sobre la posible presencia en la menor de las características del síndrome del niño abusado sexualmente. In-

---

(⁵) La teoría del síndrome del niño abusado sexualmente establece que un menor que haya sido víctima de abuso sexual exhibe, de ordinario, una serie de "características" propias de esa situación, las cuales pueden ser reconocidas por el testigo pericial. Entre otras características los niños demuestran miedo, confusión, vergüenza, pesadillas, incontinencia, retraimiento y bajo aprovechamiento escolar. *Pueblo v. Canino Ortiz,* 134 D.P.R. 796, 805 (1993).

(⁶) En su solicitud, el señor Sharma expresó haber contratado al Dr. Guillermo J. Hoyos Precssas para realizar tal evaluación.

dicó que el mencionado testimonio *únicamente* estableció el posible efecto que tendría en la menor declarar en presencia del acusado. Por último, alegó que el acusado no probó que existiera la clara necesidad que justifique la invasión al derecho a la intimidad de C.F.G.

Posteriormente, el 5 de febrero de 2003, *el Ministerio Público presentó una acusación enmendada en la que, entre otras cosas, incluyó al Dr. Raúl López —psiquiatra que evaluó a la menor— como testigo de cargo.*(7) El tribunal, luego de evaluar las posiciones de ambas partes —respecto a la solicitud de evaluación psiquiátrica y de enmienda a la acusación— emitió una resolución en la que declaró *ha lugar* ambas solicitudes. En lo pertinente, el foro de instancia concluyó que como el Estado pretendía demostrar que la menor fue víctima del síndrome del niño abusado sexualmente, *la defensa tenía derecho a demostrar lo contrario en igualdad de condiciones. Sostuvo, además, que un examen adicional a los ya efectuados no debería causar mayor intromisión a la privacidad de la menor.*

Inconforme con tal determinación, el 24 de febrero de 2003, el Procurador General acudió en representación del Ministerio Público —vía recurso de *certiorari*— ante el entonces Tribunal de Circuito de Apelaciones. Alegó, en síntesis, que el foro primario erró al declarar "con lugar" la solicitud de la defensa, ya que la condición mental de C.F.G. no era un elemento del delito imputado y el acusado no había demostrado que existiera la clara necesidad requerida para ordenar el examen psiquiátrico solicitado. El Tribunal de Circuito de Apelaciones ordenó al acusado mostrar causa por la cual no debería revocar la orden re-

---

(7) La nueva acusación expone lo siguiente:

"... allá en o para el 31 de agosto de 2002, en Caguas, Puerto Rico, Sala Superior de Caguas, ilegal, voluntaria, maliciosa, a sabiendas y con la intención criminal y sin intentar consumar acceso carnal cometió un acto lascivo o impúdico con el ser humano [C.G.F.], consistente en que siendo la víctima menor de catorce (14) años de edad, el aquí acusado la sentó sobre sus piernas en el área del pene, le tocó el área de los senos y la besó en el área de la boca en varias ocasiones." Acusación enmendada, pág. 1.

currida; paralizó, además, los procedimientos a nivel de instancia.

Luego de evaluar la comparecencia del acusado, el mencionado foro *revocó* la orden recurrida y devolvió el caso al foro de instancia para la continuación de los procedimientos. Al así resolver, el foro apelativo intermedio sostuvo que el Ministerio Público no había utilizado prueba pericial para demostrar que la menor padecía del síndrome del niño abusado sexualmente, por lo que la contención del acusado a los efectos de que se debía confirmar si en efecto existía dicho síndrome era inmeritoria. De igual forma, dispuso que como el acusado no esbozó hechos u otra evidencia demostrativa de la necesidad de efectuar la evaluación solicitada, el foro primario no hizo buen uso de su discreción al concederla, ya que al sopesar los intereses en conflicto el perjuicio que se le podría causar a la menor en cuanto a su intimidad e integridad sería mayor que el que sufriría el acusado de denegársele la evaluación solicitada. Por último, el mencionado foro enunció que, a su juicio, el conocimiento a fondo de la realidad de la menor C.F.G. no era indispensable para la adecuada defensa del acusado.

Insatisfecho con dicha determinación, el acusado peticionario acudió, vía *certiorari*, ante este Tribunal. Alegó, en síntesis, que el foro apelativo intermedio erró al resolver que no existió la "clara necesidad" requerida para ordenar la evaluación psicológica de la menor y que el interés de ésta en cuanto a su intimidad e integridad era mayor que el del acusado respecto a una defensa adecuada. Asimismo, el peticionario cuestiona la determinación relativa a que el conocimiento de la realidad mental de la menor no era indispensable para su adecuada defensa.([8]) Finalmente,

_____

([8]) Además de presentar el mencionado recurso, el peticionario presentó una moción en auxilio de jurisdicción. En ésta solicitó que paralizáramos lo procedimientos ante el foro primario hasta que se dispusiera de la controversia relativa a la evaluación psiquiátrica.

adujo que las condiciones para solicitar la evaluación las creó el Ministerio Público al anunciar como testigo al doctor López Menéndez e intentar presentar mediante su testimonio prueba relativa al síndrome del niño abusado sexualmente.

*Expedimos el recurso y ordenamos la paralización de los procedimientos a nivel del tribunal de instancia.* En su alegato, *el Procurador General sorpresivamente acepta, por primera vez, que el Ministerio Público se propone utilizar el testimonio del doctor López Menéndez para probar la existencia en la menor de las características relacionadas al síndrome del niño abusado sexualmente.* Arguye que, a pesar de ello, el acusado no estableció una clara necesidad para que el tribunal ordenara la evaluación. Sostiene, finalmente, que el acusado no quedará desprovisto de una defensa adecuada ya que, de acuerdo con las Reglas 52 a 59 de Evidencia, 32 L.P.R.A. Ap. IV, *podrá tener el beneficio de estar asistido por un perito durante la celebración del juicio y éste podrá declarar sobre el comportamiento y salud mental de la menor.*

Hoy, y por encontrarse igualmente dividido el Tribunal, se emite una sentencia *confirmatoria* de la emitida por el Tribunal de Apelaciones. *Disentimos*; veamos por qué.

I

Como es sabido, nuestro sistema de justicia criminal garantiza que todo acusado tenga derecho a preparar adecuadamente su defensa. Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A. Tomo 1, ed. 1999, pág. 327. Cónsono con ello, este Tribunal ha resuelto que "el derecho a un descubrimiento de prueba es consustancial con el derecho de todo acusado a defenderse en un proceso criminal en su contra". *Pueblo v. Guzmán*, 161 D.P.R. 137, 147 (2004). Véanse, además: *Pueblo v. Arzuaga*, 160 D.P.R. 520 (2003); *Pueblo v. Arocho Soto*, ante.

14

El vehículo procesal provisto en las Reglas de Procedimiento Criminal para que todo acusado pueda preparar adecuadamente su defensa es el descubrimiento de prueba, el cual está delimitado por las Reglas 94, 95 y 95B de Procedimiento Criminal.[9] No obstante, ninguna de estas reglas establece que un acusado de unos supuestos actos pueda obligar a la víctima a que se someta a una evaluación psicológica. *Pueblo v. Arocho Soto*, ante.

Predicado en que el aludido derecho no es absoluto, hemos sostenido que

"[e]l descubrimiento de prueba que rebasa el texto de la Regla 95 y busca apoyo en el debido proceso de ley *no es recurso a invocarse livianamente*. Está muy lejos de ser patente de corso que en forma indiscriminada permita la intrusión en los archivos de fiscalía, ni que facilite al acusado cuanta evidencia pueda relacionarse con el caso criminal." (Énfasis suplido.) *Pueblo v. Irizarry*, 160 D.P.R. 544, 566 (2003), citando a *Pueblo v. Rodríguez Sánchez*, 109 D.P.R. 243, 246–247 (1979). Véase, además, *Pueblo v. Romero Rodríguez*, 112 D.P.R. 467 (1982).

Así, pues, cuando un acusado solicita, como parte del descubrimiento de prueba, que la víctima de un delito sexual se someta a una evaluación psicológica o psiquiátrica —a ser realizada por un perito de su selección— *nace un conflicto entre el derecho del acusado al descubrimiento de prueba y a una defensa adecuada, y el derecho de la víctima a su intimidad e integridad personal.*[10] En vista del aludido conflicto, desde *Pueblo v. Arocho Soto*, ante, *quedó establecido en nuestra jurisdicción que para que proceda la mencionada evaluación el acusado debe demostrar que existe una "clara necesidad" de que ésta se lleve a cabo.*

En otras palabras, los tribunales *no* debemos utilizar livianamente la facultad de conceder los aludidos exámenes, ya que se trata de una *facultad discrecional* que sólo

---

[9] 34 L.P.R.A. Ap. II.

[10] *Otero v. Delbrey*, 144 D.P.R. 688, 701 (1998).

debe ejercerse *después de sopesar los intereses* en conflicto, o sea, *cuando la necesidad del acusado supera el perjuicio que pudiera sufrir la intimidad e integridad de la persona a ser evaluada contra su voluntad. Pueblo v. Arocho Soto*, ante, pág. 767; *Otero v. Delbrey*, 144 D.P.R. 688, 701 (1998).[11]

Tanto en Puerto Rico[12] como en un número considerable de jurisdicciones estatales norteamericanas,[13] se ha reconocido que la naturaleza intimidante y embarazosa de un examen psicológico puede aumentar el trauma emocional que sufre la víctima, *en especial cuando las víctimas son menores de corta edad.* Asimismo, dicho examen puede tener el efecto de llevar a ésta a inhibirse de informar la comisión de delitos de abuso sexual en su contra, y de atemorizarla de tal manera que llegue al punto de negarse a declarar en el juicio.

Ante estas posibles consecuencias, en varias jurisdicciones de Estados Unidos se han adoptado diversos exámenes (*tests*) para determinar si el acusado ha demostrado una clara necesidad para la evaluación pericial. El examen (*test*) *más aceptado* es el establecido en *State v. Delaney*, 417 S.E.2d 903, 907 (1992), en donde se resolvió que el juez, a la hora de tomar su decisión, *deberá evaluar los criterios siguientes*: (1) la naturaleza de la evaluación solicitada y el grado de intromisión inherente de ésta; (2) la edad de la víctima; (3) los posibles efectos físicos o emocionales que pueda sufrir la víctima por causa de la evaluación; (4) el valor evidenciario de la evaluación con respecto

---

[11] La norma de la clara necesidad adoptada en *Pueblo v. Arocho Soto*, 137 D.P.R. 762 (1994), es la que han adoptado la mayoría de las jurisdicciones estatales.

[12] *Otero v. Delbrey*, ante, pág. 702; *Pueblo v. Arocho Soto*, ante, pág. 768.

[13] *In re Michael H.*, 602 S.E.2d 729 (2004); *State v. Redd*, 642 A.2d 829, 834 (1993); *People v. Chard*, 808 P.2d 351 (Colo.1991); *State v. LeBlanc*, 558 So. 2d 507 (1990); *State v. Nelson*, 453 N.W.2d 454 (1990); *People v. Woertman*, 786 P.2d 443 (Colo. 1989); *People v. Griffin*, 524 N.Y.S.2d 153, 155 (1988); *State v. R.W.*, 514 A.2d 1287 (1986); *Moor v. State*, 709 P.2d 498 (Alaska 1985); *State v. Braxton*, 580 P.2d 1116 (Wash. 1980); *Holder v. State*, 396 N.E.2d 112 (1979); *State v. Gregg*, 602 P.2d 85 (Ka. 1979); *Ballard v. Superior Court of San Diego County*, 410 P.2d 838 (Ca. 1966).

a la controversia ante el tribunal; (5) el tiempo transcurrido entre la evaluación y el acto criminal imputado, y (6) la evidencia con la que cuenta el acusado para su defensa. Véase, además, *In re Michael H.*, 602 S.E.2d 729, 732–733 (2004).

Evaluado el examen (*test*) antes citado, consideramos que *constituye una herramienta adecuada* para que nuestros jueces de instancia puedan determinar si, dadas unas circunstancias particulares, existe una clara necesidad de realizar una evaluación psicológica a una víctima de delito sexual. *Ello no obstante, y por las razones que exponemos a continuación, no hay necesidad de utilizar dicho examen ("test") en el caso.*

## II

*En este caso nos enfrentamos a una situación muy particular.* Como expresamos anteriormente, el Ministerio Público *ha aceptado* que se propone establecer, mediante el testimonio de su perito, que la menor C.F.G. padece del síndrome del niño abusado sexualmente. *Esta circunstancia, a nuestro juicio, prácticamente establece la clara necesidad que se requiere que el acusado establezca para ordenar una evaluación psicológica a una víctima de delito sexual.* Veamos.

En *Pueblo v. Ríos Alonso*, 156 D.P.R. 428 (2002), resolvimos una controversia un tanto similar. Allí expresamos que un acusado no está obligado a establecer una "*clara necesidad*", para evaluar psicológicamente a la víctima del delito sexual, *cuando la condición mental de la víctima está relacionada a un elemento esencial del delito imputado.* Somos conscientes de que en el caso de autos la condición mental de C.F.G *no está relacionada a elemento alguno del delito*; no obstante, consideramos que el *efecto devastador* que podría tener el testimonio del doctor López Menéndez en la mente del juzgador de hechos —en este

caso el Jurado— nos obliga a resolver de la misma forma. *Veamos.*

En el caso *Pueblo v. Ríos Alonso*, ante, págs. 445–446, expresamos que

> [e]l asumir que un perito que no ha examinado a la víctima está en igual posición que aqu[e]l que la ha examinado, *ignora* las diferencias inherentes entre los testimonios de ambos peritos. *Un perito que ha examinado personalmente a la víctima está en mejor posición para emitir una opinión que aqu[e]l que no la ha examinado.* Además, éste puede asistir con mayor efectividad a la defensa en el contra interrogatorio de los testigos de cargo. (Énfasis suplido y escolio omitido.)

En vista de ello —y *citando con aprobación* la decisión emitida por el Tribunal Supremo de Illinois en *People v. Wheeler*, 602 N.W.2d 826 (1992)— *expresamos*:

> ... El testimonio psicológico es muchas veces controvertido y el valor de una opinión pericial depende en gran medida de *la base* de su opinión. ... En vista que en este caso el Estado ha tenido el derecho exclusivo para examinar a [la víctima], la *credibilidad* de sus peritos se ha *elevado por encima* de la de los peritos de la defensa, quienes no han examinado a la víctima. Por ello, *determinamos que es esencialmente injusto que el Estado pueda presentar testimonio de peritos que han examinado a la víctima mientras el acusado está limitado a utilizar el testimonio de un perito que no ha podido examinar a ésta.* (Énfasis suplido.)

En *People v. Wheeler*, ante, un individuo fue acusado de abusar sexualmente de su hija de once años.[14] Antes de comenzar el juicio, éste se enteró de que *el Ministerio Público se proponía presentar evidencia pericial relativa a la existencia en la menor de las características asociadas con el "rape trauma syndrome", equivalente al síndrome del niño abusado sexualmente.* Ante tal situación, la defensa solicitó que se le permitiera evaluar a la menor por su propio perito o que, en la alternativa, no se le permitiera al

---

[14] El delito por el cual fue acusado el imputado *no* tenía como elemento del delito nada relativo a la condición mental de la víctima.

Estado presentar la mencionada evidencia. El foro primario denegó dicha solicitud y, luego de celebrado el juicio —en el cual testificó el perito del Estado— declaró culpable al acusado. Posteriormente, éste apeló su convicción aduciendo, entre otras cosas, que se le *privó de su derecho a un juicio justo* al no permitírsele realizar un examen psicológico independiente a la menor.

Al *revocar* la convicción del acusado, *el Tribunal Supremo de Illinois expresó que como la evidencia relativa a la existencia del síndrome del niño abusado sexualmente está dirigida a establecer que éste, en efecto, fue objeto de abuso sexual, el hecho de que el Estado pretendiera utilizar dicha evidencia presentaba una "clara necesidad" para que el acusado evaluara a la víctima.*([15]) En vista de ello, *determinó que se violó el debido proceso de ley del acusado, ya que éste fue colocado en una situación sumamente desventajosa al únicamente permitírsele —durante el testimonio del perito del Ministerio Público— estar asistido por un perito que nunca evaluó a la menor.*([16])

Resulta evidente que el hecho de que el acusado peticionario no tenga la oportunidad de evaluar a la menor —tal como lo ha hecho el Estado— *lo colocará en una situación sumamente desventajosa.* Máxime cuando la norma en esta clase de delitos es que los hechos se dan "a solas, entre adultos y niños de tierna edad",([17]) por lo que usualmente existe muy poca evidencia corroborativa. *Ciertamente, en estas circunstancias el acusado verá considerablemente limitadas sus oportunidades de tener una defensa adecuada.* Ello en vista de que, como correctamente se expresara en *People v. Wheeler*, ante, la evidencia pericial del Ministerio Fiscal —relativa a la existencia del síndrome del niño abusado sexualmente— *está dirigida a establecer que éste, en efecto, fue abusado sexualmente.*

---

([15]) *People v. Wheeler*, 602 N.W.2d 826, 831 (1992).

([16]) Véase, además, *People v. Lopez*, 800 N.E.2d 1211 (2003).

([17]) *Pueblo v. Canino Ortiz*, ante, pág. 804.

Reiteramos que la Constitución del Estado Libre Asociado de Puerto Rico protege el derecho de todo ciudadano acusado en un procedimiento criminal *a obtener un juicio justo e imparcial*, y establece que *sólo se podrá privar a una persona de su libertad* o propiedad *mediante un debido proceso de ley*. Art. II, Secs. 7 y 11, Const. E.L.A., ante. Véanse: *Pueblo v. Surez*, 163 D.P.R. 460 (2004); *Pueblo v. De León Martínez*, 132 D.P.R. 746 (1993).

Dicho de otra manera, permitir que el Estado presente la prueba anunciada sin que el acusado pueda refutarla en igualdad de condiciones, *equivaldría a una clara y palpable violación al debido proceso de ley*. Por tal razón, somos del criterio de que en la situación particular del caso de autos, donde la menor perjudicada ha sido expuesta a varias evaluaciones psiquiátricas por parte del Ministerio Público y, hasta la fecha, ha podido declarar tranquilamente ante el tribunal, *el balance de intereses entre el derecho de ésta a su intimidad e integridad y el del acusado a una defensa adecuada y a un debido proceso, obliga a decidir a favor de éste último*.

Debe señalarse, por otro lado, que el argumento del Estado relativo a que la evaluación solicitada afectará el derecho a la intimidad o la integridad de la menor, *choca* con el hecho de que ésta ha sido evaluada en varias ocasiones por el perito del Ministerio Público. *Cabe preguntarse*: ¿qué diferencia hace, específicamente en cuanto al aspecto de la invasión a la intimidad de la perjudicada y lo traumático que para ella pueda resultar el examen psicológico que ha de realizarse, que el referido examen lo lleve a cabo un perito seleccionado por el Ministerio Público, por la defensa o designado por el tribunal?

Impedir que el perito de un acusado evalúe psicológicamente a la alegada víctima del delito sexual, argumentando que dicha evaluación puede afectar la intimidad e integridad de ésta, mientras simultáneamente consentimos a que el Estado realice el mismo tipo de prueba me-

diante su perito particular sin traba alguna, resulta muy conveniente para los intereses del Estado y actúa en detrimento del debido proceso de ley del acusado. *Nuestro sentido de justicia nos impide avalar dicha posición.*

*Ahora bien,* somos conscientes de la *posibilidad* de que la víctima de un caso determinado no pueda, o no quiera, someterse a una segunda evaluación. *Después de todo, su derecho a la intimidad, por su exaltado rango constitucional,*([18]) *no permite que ésta sea obligada a someterse a un examen físico o mental.*

Predicado en ello, y en aras de proteger cualquier posible situación perjudicial para la menor en este caso, ordenaríamos al foro de instancia que provea las medidas protectoras que estime apropiadas durante la celebración de la aludida evaluación. *Meléndez, F.E.I.,* 135 D.P.R. 610, 622 (1994). *Ahora bien, si la menor C.F.G decide no someterse a la evaluación, el Ministerio Público no podría presentar evidencia pericial relativa a la existencia del síndrome del niño abusado sexualmente.* Esto, claro está, sin perjuicio de que pudiera presentar la aludida prueba mediante la opinión de expertos que *no* hayan examinado a la menor. *People v. Lopez,* ante; *People v. Wheeler,* ante, pág. 833; Regla 95B(e) de Procedimiento Criminal, ante.

## III

En mérito de lo antes expuesto, *revocaríamos* la sentencia emitida en este caso por el Tribunal de Apelaciones y *devolveríamos* el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí expresado.

---

([18]) *Otero v. Delbrey,* ante; *Pueblo v. Arocho Soto,* ante.